47 CCPA

## GENERAL SHOE CORPORATION
## v.
## HOLLYWOOD–MAXWELL CO.
### Patent Appeal No. 6469.

United States Court of Customs
and Patent Appeals.
April 12, 1960.

Smith, Kilpatrick, Cody, Rogers &
McClatchey, Atlanta, Ga. (Ernest P.
Rogers, Atlanta, Ga., of counsel), for appellant.

John Flam, Los Angeles, Cal., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and JOHNSON, retired, Associate Judges.

WORLEY, Chief Judge.

Appellant owns and is the prior user of the trademark "Ingenue" on shoes and hosiery.[1]  Appellee seeks registration of the identical mark for use on brassieres.  The Commissioner, through the Assistant Commissioner, overruled appellant's protest that concurrent use of the mark would be likely to result in confusion within the meaning of Section 2(d) of the Lanham Act (Trademark Act of 1946), 15 U.S.C.A. § 1052(d).[2]

The relevant facts are well summarized, and the grounds for overruling the protest are clearly stated in the decision below.  We take the liberty of quoting at length therefrom.

"From the record it appears that opposer uses the mark 'Ingenue' only on women's shoes.  It has so used it since 1930, and during the twenty-six year period of use more than five million dollars' worth of shoes bearing the mark have been sold and in excess of a half million dollars have been spent in advertising shoes under the mark.

"In August of 1935 applicant commenced using 'Ingenue' as a trademark for brassieres and has continuously used it since that time, having sold more than thirty-seven thousand brassieres under the mark during the two-year period preceding the execution of the stipulation.  Applicant first registered 'Ingenue'

1. Hosiery excluded here by stipulation.

2. "Sec. 2.   Trade-marks registrable on the principal register
   "No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

 *  *  *  *  *

   "(d) consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers:  *  *  *"

as a part of the composite mark 'V-Ette Ingenue' in 1937.

"Neither party knows of any instance in which, by reason of applicant's use of 'Ingenue' on brassieres, purchaser confusion has resulted."

The Examiner of Interferences stated, and I agree, that,

"It is manifest that shoes and brassieres have nothing whatever in common with respect to their essential characteristics and sales appeal, and while they are frequently found in the same stores, they are customarily sold in different departments thereof. Furthermore, it is more or less a matter of common knowledge that manufacturers of shoes do not ordinarily manufacture other articles of apparel * * *."

Appellant challenges the above reasoning, pointing out that both articles are women's apparel; that they are sold to the same class of purchasers; that they are commonly sold through the same channels of trade; and that under such circumstances the average purchaser would assume that when such articles bear the identical trademark they emanate from the same source.

Appellant also disputes the accuracy of what appears to be the second ground of the Commissioner's decision, stating that

"The Assistant Commissioner indulges the further unsupported and unjustifiable conclusion that 'It is more or less a matter of common knowledge that manufacturers of shoes do not ordinarily manufacture other articles of apparel and vice versa.'"

"The ordinary citizen could not tell, if his life depended upon it, who manufactures the 'Florsheim,' 'Jarman,' 'W. L. Douglas,' 'Thom McAnn,' or 'I. Miller' shoes. As a matter of fact, it is highly unlikely that either the Examiner of Interferences or the Honorable Assistant Commissioner of Patents would have any precise information or knowledge with respect thereto, even though their official duties tend to give them more extensive knowledge of such matters."

On the facts here, we are inclined to agree with appellant that concurrent use of "Ingenue" on the instant articles would likely result in the confusion contemplated by the statute.

If we were dealing with the same mark on such widely different articles as, for example, a woman's eyebrow pencil and a farm tractor there would be no problem. But when the articles have as much in common as is the case here, the likelihood of confusion is increased.

The reasoning in In re Keller, Heumann & Thompson Co., Inc., 81 F.2d 399, 401, 23 CCPA 837, with respect to the relationship between men's shoes and clothing appears to be equally appropriate with respect to women's shoes and brassieres:

"* * * Both are within the general class of wearing apparel. They are bought by the same class of people; it is a matter of common knowledge that both shoes and clothes are sold in country stores throughout the nation, and appellant's counsel admits that a similar sales policy exists to some extent in our cities, although he states, as no doubt the fact is, that in cities, generally speaking, clothing and shoes are sold in separate stores.

"It seems clear to us that a purchaser of men's shoes bearing the trade-mark "Timely" would, upon seeing the same mark upon men's suits, topcoats or overcoats, for sale in the same store, conclude that they had the same origin as the shoes bearing said mark."

Again, if it were really a matter of common knowledge that shoe manufacturers do not ordinarily manufacture other items of apparel and vice versa, there would be no problem. However there is no evidence to support that statement, and we hardly think it can be accepted as a fact. Indeed, in view of

the current wave of industrial mergers and resultant diversification, it is difficult to know with certainty just who is manufacturing what.

For the reasons given the decision is reversed.

Reversed.

JOHNSON, Judge, retired, did not participate in the decision.

RICH, Judge (concurring).

I agree that the concurrent use of the identical mark on women's shoes and brassieres would be likely to confuse purchasers of the goods as to their commercial sponsorship, which is what I take to be the meaning of the expression "source." Under contemporary marketing practices, the manufacturer, in many cases, does not occupy his traditional role as the "source" because he has become a mere contractor for a merchandising unit which is the entity standing behind the merchandise. It, therefore, seems of little importance to me, if it be true, that shoes and brassieres are not made by the same manufacturers. They might very well be marketed by the same organization as its own wares. As stated in Vandenburgh, Trademark Law and Procedure (1959), § 1.23 at page 28,

"A literal reading of the words 'indication of origin' can lead to a misunderstanding. When one says that a trademark must indicate origin of the goods to which it is applied, it is not intended to infer that a trademark can only be used by a *manufacturer* of the goods. It is a perfectly proper trademark although it indicates origin in a wholesaler, distributor or retailer. The origin to which reference is made is the party that introduces the goods on which the mark is used into commerce with the trademark on them and who primarily stands to gain or lose by the acceptable qualities of the goods. It is not even necessary that the public or purchasers know who is the manufacturer of the goods or who the party is in whom the 'origin' is indicated.

"It is only infrequently that the public knows who the producer is; and it is more infrequently that it cares."