**AVON SHOE CO., Inc., and Haymaker Shoe Corp., Plaintiffs-Appellants,**

**v.**

**DAVID CRYSTAL, INC., Haymaker Sports, Inc., B. Altman & Co., Best & Co., Inc., and John Wanamaker, Defendants-Appellees.**

No. 223, Docket 25654.

United States Court of Appeals Second Circuit.

Argued April 6, 1960.

Decided June 13, 1960.

---

Max Block, Jr., New York City (Ludwig M. Wilson, Rudolph Callman, Goldstein, Golenbock & Barell, and Seymour Kleinman, New York City, on the brief), for appellants.

Bernard A. Saslow, New York City (Arnold M. Grant, Lynton & Saslow, Harold A. Axel, Arthur H. Seidel and Daniel A. Gutterman, New York City, on the brief), for appellees.

Before CLARK, HINCKS and FRIENDLY, Circuit Judges.

HINCKS, Circuit Judge.

After a lengthy trial, Judge Herlands dismissed the plaintiffs'[1] complaint in which they sought an injunction prohibiting the defendants'[2] use of the word "Haymaker" in connection with the manufacture, sale, distribution and advertising of their women's sportswear which includes blouses, shirts, skirts and dresses. On the basis of voluminous findings, the Court concluded that the defendants' trade mark use of the "Haymaker" mark did not infringe the plaintiffs' "Haymakers" and "Haymakers by Avon" trade marks which were registered for men's, women's and children's shoes[3] under the Lanham Act, 60 Stat. 427, 15 U.S.C.A. §§ 1051–1127, on March 25, 1952 and February 24, 1953, respectively. The Court also held that the defendants had not competed unfairly in the use of the "Haymaker" mark. And the Court granted so much of defendants' counterclaim as requested an order directing the Commissioner of Patents to dismiss plaintiffs' pending opposition to defendant's registration of its "Haymaker" mark for items of women's sportswear and to issue said registration.

While we agree with the result reached below, we affirm on the specific grounds mentioned herein which we deem dispositive of this case. Since we refrain from expressing any view on the alternative theories suggested by Judge Herlands, we shall review and discuss only those findings relevant to our holdings. Numerous other findings of fact which were relied upon below and which depict in

1. Plaintiff Haymaker Shoe Corp. is a Massachusetts corporation, incorporated in 1950 as a subsidiary of plaintiff Avon Shoe Co., Inc., which is a New Jersey corporation, incorporated in 1935. Both plaintiffs manufacture and sell the "Haymakers" shoe.

2. Defendant Haymaker Sports, Inc., incorporated in 1945, is a subsidiary of David Crystal, Inc., incorporated in 1921. Both are New York corporations, and Haymaker Sports, Inc., manufactures and sells the "Haymaker" sportswear line. Defendants B. Altman & Co., Best & Co.,

Inc., and John Wanamaker are all New York City department stores which sell "Haymaker" sportswear.

3. Plaintiffs stated in their registration applications that their mark had been used on "men's, women's and children's shoes of leather, suede, canvas, fabric or composition and combinations thereof." The Court below found, and it is not seriously disputed here, that this statement was false in view of the fact that the mark has always been used exclusively on women's shoes composed of leather.

greater detail the events surrounding this litigation are set out at 171 F.Supp. 293. And Judge Murphy's opinion denying plaintiffs' motion for a temporary injunction is reported at 117 F.Supp. 548.

The "Haymakers" mark, which as applied to women's shoes is fanciful and arbitrary, was first suggested to the plaintiffs by one of their large department store retail outlets, Saks Fifth Avenue. After obtaining permission from the Daniel Hays Company, Inc., which owned a registered "Haymaker" mark for men's gloves, the plaintiffs first used their mark in 1941 by affixing it to the sockliners of their shoes, which were characterized below as "women's casual, comfortable walking shoes of the moccasin type." Thereafter, as Judge Herlands found, the plaintiffs carried on a trade mark use of the "Haymakers" mark for upwards of three years prior to the defendants' first use of their mark in 1945.

The extent of the plaintiffs' early sales and advertising was not clearly established at trial, due, in large part, to the plaintiffs' failure to produce important pre-1950 records. The Court attributed this failure to produce to the plaintiffs' gross negligence in destroying their records while this action was pending. Be that as it may, it is clear that the plaintiffs' early production capacity was greatly curtailed by war shortages and that prior to 1945 they daily produced approximately only 200 pairs of shoes. This production figure when considered in conjunction with the plaintiffs' insubstantial pre-1945 advertising[4] supports the finding below that the plaintiffs' mark was relatively unknown to both women consumers and members of the

women's apparel trade when the defendants first used the "Haymaker" mark in 1945.

■ As noted, the defendants in 1945 first began using the "Haymaker" mark on their goods, which were characterized below as "women's fashionable and stylish sportswear apparel, such as dresses, skirts and waists." Between April and November of that year the defendants sold their goods under the mark "Haymaker Sports" and thereafter the mark was shortened to "Haymaker," which has been used continuously to the present time. While defendants themselves did not incur large advertising expenditures in the early years of production, there is little dispute that their sportswear swiftly met with widespread sales and an excellent public recognition and reputation. The extensive advertising of defendants' goods by those department stores and women's specialty shops which carried them was a significant factor in the rapid development of defendants' "Haymaker" mark. While a comparison of the parties' actual advertising expenditures is impossible since the plaintiffs' schedules, which were properly discredited below, are unreliable, we are satisfied that the Court below was correct in concluding that the defendants' Haymaker line from soon after its inception has been far more widely known than that of the plaintiffs.

During the parties' eight year period of concurrent use which antedated the commencement of this action, they made numerous attempts to register their marks. The plaintiffs were finally successful in 1952, as noted above, after they obtained a letter of consent from the glove company which had earlier registered the "Haymaker" mark. The de-

4. The Court found that the plaintiffs' pre-1945 national advertising consisted solely of a single ¼ page ad in a 1942 issue of Harper's Bazaar and a single editorial credit in an issue of Vogue of the same year. During this period only eleven "Haymakers" ads of the plaintiffs appeared in New York City newspapers. The plaintiffs here argue that the elapse of nearly two decades has made it impos-

sible to establish anything more than a limited, distorted view of their pre-1945 advertising, which, they insist, significantly promoted the "Haymakers" mark. In particular, the plaintiffs argue that a wide recognition of the "Haymakers" mark was brought about by local department store advertising. Such advertising was not proved, and quite obviously the Court was limited by the evidence before it.

fendants' efforts were less rewarding. Their 1945 application to register "Haymaker Sports" was rejected in July 1945, because of the outstanding marks issued to the glove company, and their 1949 and 1952 applications for "Haymaker" met with similar denials. In June of 1953 the defendants' application was rejected because of the intervening registration of the plaintiffs' mark, but a subsequent application was finally passed for publication by the Patent Office after that office found that the mark, when applied to the defendants' goods, was not confusingly similar to any registered mark. The plaintiffs' impending opposition has prevented the issuance of a registration to the defendants who published their mark in 1954.

■ Thus far, at least, the controlling facts are not in serious dispute. We will now examine two critical findings which the plaintiffs strenuously assail. First, the Court concluded that the defendants' adoption and use of their "Haymaker" mark was in complete good faith—without knowledge of the plaintiffs' prior use and without desire to reap any benefits which might flow to a junior user of the Haymaker mark on goods related to those of the first user. We accept this finding, notwithstanding the plaintiffs' contention that the defendants' knowledge of the registered glove trade marks, be it actual, constructive, or imputed, was an infirmity attaching to their adoption of the Haymaker mark. The Court accepted the defendants' testimony that they were first advised by their trade mark Service of the glove mark use in 1949 and first learned of the plaintiffs' use in 1952. We have no valid reason to disturb these credibility determinations. Indeed, the meagerness of the plaintiffs' pre-1945 advertising and sales lends credibility to the defendants' testimony that they had no actual knowledge of the plaintiffs' prior shoe use when they commenced using their "Haymaker" mark in 1945.

■ Nor can the defendants be charged with constructive notice of the glove marks which were registered under the earlier Act of 1905 since that Act had no counterpart to the constructive notice provisions of the Lanham Act, 15 U.S.C.A. § 1072. It is true that the Lanham Act indeed prevents a junior user from claiming good faith when his use begins subsequent to a prior user's registration under the Act. But that provision is inapplicable here. For the defendants' use commenced more than two years prior to the effective date of that Act.

■ Whether the uncommunicated knowledge of the defendants' agent, their trade mark Service, can, as the plaintiffs contend, be so imputed to the defendants as to establish their bad faith, we need not decide. For the defendants' good faith in adopting and initially using their mark is not impugned by any knowledge which they might have *subsequently* [5] received of a Haymaker mark used only on men's gloves.[6] And such knowledge, whenever received, would obviously not have put the defendants on notice of the plaintiffs' use of such a mark on women's shoes. We conclude that the finding as to the defendants' good faith may not be disturbed.

■ The second critical finding which is sharply attacked by the plaintiffs is that the defendants' use of the "Haymaker" mark has not caused, nor

---

5. As noted earlier in this opinion, the defendants began their use of the Haymaker mark in April 1945. It was not until July 1945, if testimony of the plaintiffs' witnesses be accepted, that the defendants' trade mark Service was notified of the glove company mark.

6. Even if the defendants had knowledge of the men's glove mark at the very time when they began to use the Haymaker mark, such knowledge did not necessarily establish their bad faith, even vis-a-vis the glove company. For there would have been little reason for defendants to assume that their use of the "Haymaker" mark on women's sportwear would infringe on the men's glove mark. In this connection, we note that the plaintiffs themselves advised the Patent Office that their women's shoes and men's gloves were goods "sufficiently dissimilar to preclude confusion."

is it likely to cause, confusion as to the source of origin of the defendants' goods. This finding we cannot sustain. Confusion as to source of origin is, of course, the keystone of an action based upon infringement of a registered mark. 15 U.S.C.A. § 1114(1). Thus, a crucial question here was whether there was a likelihood that an appreciable number of ordinary prudent purchasers of the defendants' women's sportswear might, by reason of the "Haymaker" mark, be misled into believing that the defendants' goods came from the same source as the plaintiffs' shoes. Maternally Yours, Inc. v. Your Maternity Shop, Inc., 2 Cir., 234 F.2d 538. We think this question should have been answered in the affirmative.

We need not pause to consider the trial court's ruling that those instances of actual confusion which the plaintiffs attempted to establish were *de minimis*. For we hold that a finding of likelihood of confusion as to origin was amply required by other more substantial proofs. This is a case where distinctive marks, which for all practical purposes are identical, are used on closely related goods which serve both common functions and common purchasers. Moreover, the defendants' goods are marketed in a high percentage of the plaintiffs' retail channels, in some instances, in fact, being sold on the same floor of leading New York department stores. There was uncontradicted evidence that a number of well known trade marks in the women's apparel field—Dior, Capezio, Jantzen and Schiaparelli—are used to denote a common source for shoes and sportswear. We assume that this fact is common knowledge to many women purchasers who are, in the words of the trial court, possessed of a "certain degree of sophistication." And if, as we have no reason to doubt, these consumers are also "discriminating" and "choosey and selective," their necessary reliance upon labels would only heighten the possibility of confusion.

Although the defendants have never attempted to pass off their goods as those of the plaintiffs, being apparently quite content to pay their own way, the fact of their good faith cannot eliminate the likelihood of consumer confusion. We need cite only two past instances of innocent, but confusing promotion which might easily reoccur in the future. Thus, a retail store has run local newspaper advertising in which the parties' products have appeared in adjacent advertisements with the "Haymaker" mark being the sole source identification of both. And the parties' products were depicted on facing pages of a national fashion magazine, each identified by the editorial credit, "by Haymaker." The trial court placed undue emphasis on the fact that the plaintiffs' shoes are principally keyed to comfort rather than style, whereas defendants' sportswear is highly stylish and fashionable. The parties sell women's casual wear in the middle price range through similar and, in many instances, identical retail outlets. Even if we assume, *arguendo*, that the casual wear of both parties would not be worn by the same customer on the same occasion, we find no basis in the record for a conclusion that the parties' goods are so unrelated as to attract different segments of the feminine purchasing public. We hold that likelihood of confusion was established. See, e. g., General Shoe Corp. v. Lerner Bros. Mfg. Co., 254 F.2d 154, 45 CCPA 872; General Shoe Corp. v. Hollywood Maxwell Co., Cust. & Pat. App.1960, 277 F.2d 169; In re Keller, Heumann & Thompson Co., 81 F.2d 399, 23 CCPA 837; Admiral Corp. v. Penco, Inc., 2 Cir., 203 F.2d 517; S. C. Johnson & Son v. Johnson, 2 Cir., 175 F.2d 176, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (and cases cited therein); cf. L. Nachman & Son, Inc. v. E. Lasner, Inc., 263 F.2d 342.

■■■■ The plaintiffs argue that as the first user of the "Haymaker" mark they are absolutely entitled to enjoin its use on related goods when, as here, some confusion is likely, even if the defendants acted in good faith in selecting and using their mark for many years, and even if the trial court was right in find-

ing that a balance of the equities inclined heavily in the defendants' favor. While this argument, perhaps quite literally, paraphrases the wording of the Lanham Act, 15 U.S.C.A. § 1114(1), it is perfectly clear that this Court, at least, has never subscribed to such a restrictive reading of the Act as would empower a first user, solely because of his priority, to automatically enjoin the use of the mark by an innocent junior user on related goods in every case where confusion of source of origin is likely.[7] Such may be the law when the junior user, although acting in good faith, *sells products which are in competition* with those of the senior user since injury to its business is then inevitable. La Touraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115. But we have consistently held that a senior user possesses but two legitimate interests which may properly call for injunctive relief against a use by a junior user on related goods, namely, that he may at some future date desire to expand his business into the related field in which the junior user is operating and that he, in any event, should be able to develop his present business free from the stain and tarnishment which may result from improper trade practices of the junior user. But against these legitimate interests of the senior user are to be weighed the legitimate interests of the innocent second user. S. C. Johnson & Son v. Johnson, supra; Federal Telephone & Radio Corp. v. Federal Television Corp., 2 Cir., 180 F.2d 250; Hyde Park Clothes, Inc.

v. Hyde Park Fashions, Inc., 2 Cir., 204 F.2d 223, certiorari denied 346 U.S. 827, 74 S.Ct. 46, 98 L.Ed 351; G. B. Kent & Sons, Limited v. P. Lorillard Co., D.C., 114 F.Supp. 620, affirmed 2 Cir., 210 F.2d 953.

As the Court below quite properly recognized, this long line of authority establishes these principles as well beyond judicial reconsideration at this late date, and we restate them here only to remove any possible ambiguity which may have arisen from the trial court's occasional characterization of its task as that of evaluating the parties' conduct and weighing the "equities." This process is more accurately described as balancing the *conflicting interests* both parties have in the unimpaired continuation of their trade mark use. Such a clarification, we think, would have eliminated many issues raised below which, although they might bear on the "equities" of the parties, are irrelevant to a proper consideration of the interests involved.[8]

■ We hold, however, that the balance of interests even when purged of all irrelevant considerations preponderates in defendants' favor, although the balance was not as heavy as indicated below. While it is quite clear that the plaintiffs' mark is a strong one not merely because it is fanciful and arbitrary as applied to their goods, but also because it has not been often used by others on either related or on unrelated goods,[9] it is not seriously disputed that

---

7. The plaintiffs' registration of its Haymakers mark for shoes does not carry any presumption of an exclusive right to use that mark on noncompeting goods, such as the defendants' sportswear. Its registration is *prima facie* evidence of its exclusive right to use the mark only "on the goods or services specified in the certificate." 15 U.S.C.A. § 1115(a). In consequence, *although this pending action has prevented the plaintiffs' mark from becoming incontestable under 15 U.S.C.A. § 1065, it may be noted that incontestability under that section would carry a conclusive presumption of the plaintiffs' exclusive right to use its mark only on shoes.

8. By way of example, we note that the trial court mistakenly considered as relevant the fact that the plaintiffs made certain false statements in their trade mark applications, see fn. 3, supra; that the plaintiffs in early advertisements misrepresented to the public that the "Haymakers" shoe was registered in the United States Patent Office; and the absence of originality in the plaintiffs' adoption of the "Haymakers" mark.

9. It appears that the only other uses of the "Haymaker" mark not already referred to have been on ladies' hand bags, farm seeds, hay storage bins, bailer twine, hay and forage chopping machines, and possibly textile fabrics.

614

the defendants have always produced a quality line of merchandise and that the probabilities are slight that they will ever tarnish the plaintiffs' mark by producing inferior products. True, that possibility always exists. But not only does past performance point the other way, Federal Telephone & Radio Corp. v. Federal Television Corp., supra, but also it is fair to say, the defendants' widespread quality reputation has actually enhanced and will in all probability continue to enhance the value of plaintiffs' mark. Nor have the plaintiffs ever intended to make or sell women's sportswear. Measured by past and present performance, the possibility of plaintiffs' future expansion into that field is slight indeed, as we have already seen. They concededly learned of the defendants' use at least as early as February, 1952. Yet it was not until sixteen months later that they so much as sent a "cease and desist" letter to the defendants. Weighed against defendants' interests in preserving the substantial good will they have created by means of their extensive, concurrent use of the "Haymaker" mark in good faith, the plaintiffs' interests and any resulting confusion are factors too slight to outweigh the defendants' interests.

In view of the holding just stated, we need not consider whether the trial court was correct in ruling that the defendants had established a statutory defense under the Lanham Act, 15 U.S.C.A. § 1115(b) (5), or whether that section merely allows an innocent junior user,

whose use antedated the first user's registration, to avoid the conclusive effect of an otherwise incontestable registration, thus leaving the first user to his remedy under § 1114(1), subject to proving the validity of his mark.

■ The plaintiffs' unfair competition claim, which is based upon their common law rights in their trade mark, is governed by essentially the same principles as those already discussed, regardless of whether state or federal law applies.[10] Possible differences between the New York and federal law of unfair competition would not support the plaintiffs' claim here. The plaintiffs' reliance on the dilution theory, discussed in G. B. Kent & Sons, Limited v. P. Lorillard Co., supra, is misplaced. For they make no claim that their mark has been registered under Section 368-c of New York's General Business Law. Dawn Donut Company v. Hart's Food Stores, Inc., supra. And the facts here do not support a case of unfair competition under the decisional law of New York.[11]

■ We come finally to the provision of the decree sustaining the counterclaim with its directions to the Commissioner of Patents to dismiss the opposition to, and to grant, the concurrent registration of the defendants' mark. This feature of the decree has not been made a ground of appeal or the subject-matter of argument on the appeal. Nevertheless, we feel that before we affirm mandatory directions to the Commissioner we should satisfy ourselves that the di-

10. Maternally Yours, Inc. v. Your Maternity Shop, Inc., supra; Dawn Donut Company v. Hart's Food Stores, Inc., 2 Cir., 267 F.2d 358; Artype, Inc. v. Zappulla, 2 Cir., 228 F.2d 695; Hyde Park Clothes, Inc. v. Hyde Park Fashions, Inc., supra; G. B. Kent & Sons, Limited v. P. Lorillard Co., supra; cf. Speedry Products, Inc. v. Dri Mark Products, Inc., 2 Cir., 271 F.2d 646.

11. In all such cases as Philadelphia Storage Battery Co. v. Mindlin, 163 Misc. 52, 296 N.Y.S. 176; Tiffany & Co. v. Tiffany Productions, 147 Misc. 679, 264 N.Y.S. 459, affirmed 262 N.Y. 482, 188

N.E. 30; Long's Hat Stores Corp. v. Long's Clothes, 224 App.Div. 497, 231 N.Y.S. 107; John Forsythe Co. v. Forsythe Shoe Corp., 234 App.Div. 355, 254 N.Y.S. 584, modified 259 N.Y. 248, 181 N.E. 467, the second user had commenced his use with full knowledge of the first user's extended, widespread use and with no interest other than to appropriate and trade on the first user's good will. Furthermore, in many of these cases the first user also either contemplated entering the second user's market or was in likelihood of having his mark tarnished by the second user's trade practices.

rections have statutory authority and are in other respects proper. Judicial authority for the directions is plainly conferred by § 37 of the Lanham Act, 15 U.S.C.A. § 1119.[12] We turn to § 2 of the Act, 15 U.S.C.A. § 1052, which contains the only provisions for concurrent registration, to determine whether the exercise of judicial power was proper.

Section 1052(d), as appears from the text which we show in the margin,[13] exempts from the requirement of *mandatory* registration marks previously used which when applied to the goods of the applicant might cause confusion. And the proviso of § 1052(d) authorizes a *permissive,* concurrent registration to a second applicant in two classes of cases: (1) when there has been a concurrent lawful use by the second applicant prior to the first registration and when the Commissioner or a court on appeal determines that the concurrent registration can be granted without causing confusion; and (2) when "a court has finally determined that more than one person is entitled to use the same or similar marks in commerce." Our holdings as stated in the earlier part of this opinion bring this case within the second class of the proviso.

On the face of the proviso the second class was stated more broadly than the first in that it was not restricted to cases in which concurrent registration of a second mark would not result in confusion. We think it reasonable to infer that the absence of that restriction in the second class was deliberate. We hold that by the second class it was intended to extend rights of registration to cases like this in which the applicant has engaged in a lawful concurrent use of the mark and proposes to continue in the use only on noncompeting goods where the likelihood of public confusion and of private harm is slight. Cf. Derenberg, The Patent Office as Guardian of the Public Interest in Trademark Registration Pro-

12. Bascom Launder Corp. v. Telecoin Corp., 2 Cir., 204 F.2d 331, 335; Massa v. Jiffy Products Co., 9 Cir., 240 F.2d 702, 707; and Simmonds Aerocessories, Limited v. Elastic Stop Nut Corp., 3 Cir., 257 F.2d 485, 490–491.

13. "§ 1052. *Trade-marks registrable on principal register; concurrent registration*

"No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

\* \* \* \* \*

"(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers: *Provided,* That the Commissioner may register as concurrent registrations the same or similar marks to more than one registrant when they have become entitled to use such marks as a result of their concurrent lawful use thereof in commerce prior to any of the filing dates of the applications involved and the Commissioner or a court on appeal determines that confusion or mistake or deceit of

purchasers is not likely to result from the continued use of said marks under conditions and limitations as to the mode or place of use or [So in original. Probably should read "of."] the goods in connection with which such registrations may be granted which conditions and limitations shall be prescribed in the grant of the concurrent registrations thereof; and concurrent registrations may be similarly granted by the Commissioner with such conditions and limitations when a court has finally determined that more than one person is entitled to use the same or similar marks in commerce. The Commissioner shall give not less than thirty days' written notice to all applicants, registrants, and users specified by any of the parties concerned of any application for concurrent registration and of the time and place of the hearings thereon. When the Commissioner decides to grant a concurrent registration the proposed registration shall be published in the Official Gazette of the Patent Office and the application shall be subject to opposition as hereinafter provided in this chapter for other applications to register marks. Concurrent registrations may be ordered by a court in an action under the provisions of section 63 of Title 35, under such conditions and limitations as the court considers proper in accordance with this chapter."

ceedings, 14 Law and Contemporary Problems 288, pp. 313–314 (1949). We conclude that the directions below were altogether proper and appropriate. The defendants' application was in specific terms; it sought registration of the mark "on women's shirts, skirts, blouses, shorts, jackets, dresses, suits and slacks." No further restrictions seem necessary to preclude its use on shoes.

The defendants' request for an award of counsel fees on this appeal is denied. We have no reason to doubt that this appeal was brought in good faith to press issues which are far from frivolous. Certainly the contrary has not been established.

Affirmed.