CHIPS 'N TWIGS, INC., a corporation, Plaintiff,

v.

Abraham PRIVES et al., Defendants.

Civ. A. No. 40367.

United States District Court
N. D. California, S. D.

Nov. 6, 1963.

Gordon Wood, San Francisco, Cal., for plaintiff, Steinberg, Richman, Price & Steinbrook, and Sigmund H. Steinberg, Philadelphia, Pa., of counsel.

Healy & Robinson, and John Healy, San Francisco, Cal., for defendants.

WOLLENBERG, District Judge.

Chips'n Twigs, Inc., hereinafter referred to as plaintiff, has brought this action for trade-mark infringement and unfair competition against Abraham Prives and Eligio M. Marelli, hereinafter referred to as defendants. Plaintiff seeks an injunction prohibiting defendants from using the trade-name "Mr. Chips" in connection with their retail men's clothing business in Oakland, California, and from using the trade-mark "Mr. Chips" on any garments sold in such business. Defendants' actions are alleged to constitute an infringement of plaintiff's use of its registered trade-marks "Mr. Chips", "Chips", "Chips Off The Old Block" and "Chips 'n Twigs". Plaintiff, a Pennsylvania corporation with principal offices in Philadelphia, is a manufacturer and nationwide distributor of boys' and young men's clothing.

Jurisdiction of this court is based upon the Lanham Trade-Mark Act of 1946. 15 U.S.C.A. § 1051 et seq.[1]

Plaintiff and its predecessor organizations (B. Schwartz & Company and Wm. Schwartz & Co., Inc.) have been manufacturers of boys' (and much more recently young men's) clothing since 1916. The first use of the word "Chips" to identify any of plaintiff's products occurred in 1944. Since that time, plaintiff has become the owner of the following United States Patent Office trade-mark registrations: "Chips Off The Old Block", registered Mar. 13, 1945, Reg. No. 412,572; "Chips", registered June 12, 1945, Reg. No. 414,492; "Mr. Chips", registered Nov. 20, 1956, Reg. No. 637,481; and "Chips 'n Twigs", registered Sept. 24, 1957, Reg. No. 652,100. Plaintiff also registered its "Chips" trade-mark with the Secretary of State of the State of California on Feb. 18, 1957, Reg. No. 38464. During the years 1956 through 1962, plaintiff spent approximately $320,-000.00 advertising products bearing the above trade-marks. Defendants do not dispute either plaintiff's ownership or the validity of these trade-marks.

Plaintiff uses the foregoing trade-marks to designate the types and size groupings of the various boys' and young men's garments which it manufactures. Specifically, plaintiff uses the "Mr. Chips" trade-mark to identify its suits, sport coats and other garments in the boys' and young men's size range 13 to 20, and in the men's size range 36 to 42.

Plaintiff has been selling its boys' and young men's garments to various retail outlets in California since at least 1956. Since August of 1958, plaintiff has had a permanent sales representative in California. This representative, who promotes the sale of the full line of products bearing plaintiff's various "Chips" trade-marks, testified that he calls on approximately 400 retail stores throughout the

---

1. See 15 U.S.C.A. § 1121 which provides in part: "The district and territorial courts of the United States shall have original jurisdiction * * * of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

State of California. While sales of garments specifically bearing the plaintiff's "Mr. Chips" trade-mark have been rather modest, they are nonetheless substantial and apparently increasing.

Defendants' use of the name "Mr. Chips" is comparatively recent, dating back to about July of 1960. Prior to that time defendants operated a men's clothing store under the name "Al's Attire", in Oakland, California. In order to meet competition and follow what they describe as a general style trend in the men's clothing field from the conventional American-style and pattern to the "Ivy League" or English traditional and continental styles, defendants decided in 1959 to effectuate a complete change-over in their inventory of stock to the latter styles of merchandise. Defendants adamantly maintain that they had never heard of plaintiff or any of its products, and they allege that the name "Mr. Chips" was selected from the well known English novel, "Good-bye, Mr. Chips",[2] as being representative of the new image which they desired to convey to the public.

Before officially adopting the "Mr. Chips" name, defendants evidently checked with the Secretary of State of the State of California and the appropriate County Clerks' offices to determine whether any other firms were doing business under such name in either Alameda County or San Francisco County. Receiving negative reports defendants thereupon filed and published certificates of co-partnership under the name "Mr. Chips" in the two named counties, and they commenced using "Mr. Chips" as a trade-name and trade-mark in the operation of two retail men's clothing stores, one in Oakland

and one in San Francisco. Operation of the San Francisco store was of short duration, but the Oakland "Mr. Chips" store has been in operation from July of 1960 to the present time. Defendants apparently did not check for trade-mark registrations with either the Secretary of State of the State of California or with the United States Patent Office.

On or about December 9, 1960, defendants received a letter from plaintiff advising them of plaintiff's various "Chips" trade-marks and requesting them to immediately discontinue further use of "Mr. Chips" as either a trade-name or trade-mark. Defendants elected to continue their use of the name "Mr. Chips", and this action was subsequently initiated by plaintiff.

■ The test of defendants' liability for trade-mark infringement is whether or not their activities fit within the prohibitions of the Lanham Trade-Mark Act. The Act defines trade-mark infringement as encompassing any person who uses in commerce, without the consent of the registrant:

"* * * any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is *likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services.*" (Emphasis added.)[3]

In the multitude of decisions rendered in actions brought under the above statutory provision, the likelihood of confusion or mistake or deception of the average purchaser as to the source of origin of the

2. Written by James Hilton in 1933.

3. 15 U.S.C.A. § 1114. This provision was amended in 1962 (Pub.L. 87–772) to delete the phrase "purchasers as to the source of origin of such goods or services." The purpose of the deletion was evidently to clarify the language of the provision. (See Senate Report 2107, Sept. 18, 1962 with reference to Sections 2 and 17 of H. R. 4333, U.S.Code Cong. & Ad.News, 2844, at 2847 and 2850, [1962].) The deletion in no way appears to restrict the original definition of trade-mark infringement, and apparently broadens it. Since the defendants' activities complained of herein have continued from 1960 to the present time, presumably both versions of this provision are applicable. However, since the bulk of the defendants' allegedly infringing activity occurred prior to the 1962 amendment, we shall apply the original (and possibly more restrictive) definition of trade-mark infringement.

defendants' goods is the acknowledged keystone for finding infringement of a registered trade-mark. After reviewing the various evidentiary material and testimony offered by the parties, the court is of the opinion that such a likelihood of confusion or mistake or deception exists upon the facts of this case.

While plaintiff alleges that the defendants' use of the name "Mr. Chips" constitutes infringement of four of its registered trade-marks which include the word "Chips",[4] the court's finding of infringement is limited to plaintiff's trade-mark "Mr. Chips", which is the most closely approximated by defendants' business name and garment labels. Having determined that defendants have infringed the "Mr. Chips" trade-mark, the court does not deem it necessary to decide here whether defendants have also infringed any of plaintiff's other registered trade-marks.

The finding that defendants' activities are likely to confuse the public and constitute infringement of plaintiff's "Mr. Chips" trade-mark is well supported by the evidence. Defendants' use of the name "Mr. Chips" in their retail men's clothing business has great similarity to plaintiff's registered trade-mark. The name "Mr. Chips" appears on defendants' store-front, merchandise bags, sales receipts, and on labels attached to suits, sport coats, and other garments sold to the public. It is this latter use, of course, which is the most likely to cause confusion in the mind of a purchaser.

Defendants stress the facts that their "Mr. Chips" labels include the small figure of "an English gentleman", the designation "San Francisco-Oakland" or "Oakland", and the use of a style of lettering for the words "Mr. Chips" which is distinguishable from the style used by plaintiff. It must be noted, however, that plaintiff also employs a small male figure on its labels; and some of plaintiff's "Mr. Chips" labels also bear an added designation, "Means Style", in small size print not unsimilar to that used in defendants' store location designation. These distinctions, as well as the difference in lettering style, are definitely minor. The court is of the opinion that, for all practical purposes, the two labels are identical. The rule applicable here is that a court should " * * * consider the points of general similarity rather than the less important points of specific difference.[5] Of controlling significance, therefore, is the fact that the identical name "Mr. Chips" is the dominating characteristic of both plaintiff's and defendants' labels.

Defendants' merchandise bearing the "Mr. Chips" label is sufficiently similar to the products of plaintiff to create a likelihood of confusion regarding source of origin. Defendants continually emphasized that they sell only "adult" men's wear, while plaintiff manufactures and sells only "boys" and "young men's" clothing. But this distinction, especially as between "adult" and "young men", is principally one of semantics and actually does little to dispel a likelihood of confusion as to the source of origin of the defendants' merchandise. Even granting defendants the maximum distinction possible, it is still clear that the sale of "young men's" and "adult" men's clothing are definitely related activities. There are numerous cases where courts have enjoined the use of a name on goods far more unlike or unrelated than those presently involved.[6]

---

4. "Mr. Chips", "Chips", "Chips 'n Twigs" and "Chips Off The Old Block". Plaintiff is also owner of the trade-mark "Lord Chips", registered with the U.S. Patent Office on May 2, 1961, Reg. No. 714,773. No infringement of this mark has been alleged in the present action.

5. Callmann, Unfair Competition and Trade-Marks 1382 (2d ed. 1950).

6. A few such cases involving clothing are: "Seventeen" on clothes enjoined by "Seventeen" magazine, Hanson v. Triangle Publications, 163 F.2d 74 (8th Cir. 1947), certiorari denied 332 U.S. 855, 68 S.Ct. 387, 92 L.Ed. 424 (1948); Triangle Publications v. Rohrlich, 167 F.2d 969 (2d Cir. 1948); "Bulova" on shoes enjoined by the watch manufacturer, Bulova Watch Co. v. Stolzberg, 69 F.Supp. 543 (D.Mass.

Furthermore, the testimony at trial regarding methods used in the sale of "young men's" and "adult" men's clothing brought out the fact that these are not only related activities, but the distinction between them is blurred by certain overlapping factors.

Plaintiff's young men's suit and sport coat sizes 18, 19 and 20 are approximately equivalent to men's sizes 34, 35 and 36. Depending upon the volume of business and the merchandising practices of the store involved, suits and sport coats in these overlapping size ranges are offered for sale either in closely adjoining sales departments, or, in the case of smaller stores, in the same department. Plaintiff's "Mr. Chips" suits and sport coats in young men's sizes are sold in various San Francisco Bay area stores, at least one of which is located within a few blocks of defendants' "Mr. Chips" store.

In the Fall of 1958, plaintiff expanded its "Mr. Chips" line of sport coats to include men's sizes 36 to 40. More recently, some "Mr. Chips" garments have been manufactured in sizes up to and including men's size 42. Plaintiff has sold these garments in other parts of the country, although no California sales have yet been made. However, plaintiff is now in the process of introducing this line in California, and there is no reason to believe that this expansion will not be successful.

Defendants' "Mr. Chips" store carries various suits and sport coats as small as men's size 37. Most of these garments have the same slim and youthful "Ivy League" type of styling found in plaintiff's products. Although defendants' merchandise is generally of better quality and higher price than that of plaintiff, in some instances the garments of both appeared roughly comparable in quality and price, in addition to being identical in size and style. While it is well established that actual competition is not necessary for a finding of trademark infringement,[7] it is clear that some of the defendants' and plaintiff's goods may attract the same type of customer. Indeed, Mr. Prives (who conducts the operation of defendants' store) testified that defendants enjoy some "drop-in" trade and will sell to whomever their garments will fit, regardless of age. This policy is also evidenced by the legend, "Selective Traditional Styling For Young Men Of All Ages", which appears on defendants' sales receipts. Thus defendants' contention that they sell to a segment of the market distinctly different from that which purchases plaintiff's products is extremely weak at best.

Defendants also stress the fact that plaintiff distributes its products on a wholesale basis, while theirs is strictly a retail operation. The court finds little merit in such a distinction. The fact that a professional wholesale buyer, a person presumably familiar with the variously trade-marked products in the male clothing field, would not be confused by defendants' retail use of the "Mr. Chips" name simply begs the question. It is the buying public which the trade-mark laws are designed to protect; and it must be remembered that this public not only lacks the sophistication and experience of a professional wholesale buyer, but long ago was aptly described as " * * * that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions."[8] The small importance which should be ascribed to

1947) ; and "Fancy Free" on women's lounging wear enjoined by "Fancee Free" on women's under-garments, Fancee Free Mfg. Co. v. Fancy Free Fashions, 148 F. Supp. 825 (S.D.N.Y.1957).

7. In the recent case of Fleischmann Distilling Corp. v. Maier Brewing Company, 314 F.2d 149, at 151 (9th Cir. 1963), the court said: " * * * the Lanham Act of 1946 * * * made plain that infringement might be found and prohibited, though the use of the registered mark was upon goods having different descriptive properties than those set forth in the registration, and though in consequence there was no actual competition between the parties."

8. Florence Mfg. Co. v. J. C. Dowd & Co., 178 F. 73, 75 (2d Cir. 1910).

defendants' wholesale-retail distinction is further illustrated by Sunbeam Lighting Co. v. Sunbeam Corporation, 183 F.2d 969 (9th Cir. 1950), certiorari denied, 340 U.S. 920, 71 S.Ct. 357, 95 L.Ed. 665 (1951). In this case, the manufacturer of "Sunbeam" electrical appliances was only partially successful in enjoining the activity of a California fluorescent lighting fixture manufacturer and wholesaler from using substantially the same name. The final injunction was primarily concerned with that small portion of the California company's activity which involved direct retail sales to the public and a consequent likelihood of confusion. Referring to this limited injunction, the Ninth Circuit Court of Appeals said in a subsequent Sunbeam case:

"* * * the remoteness of confusion by the purchaser of electric fluorescent light fixtures with the manufacturer of household appliances stemmed largely from the fact that the light fixture is ordinarily selected by an architect and installed by an engineer or an electrical contractor, in contrast to the 'over the counter' purchase of a kitchen gadget. However, the distinction was not held to apply to portable fluorescent lamps which in common knowledge yield to sale and purchase in similar manner to the sale and purchase of household appliances." [9]

Suffice it to say that, in the present case, the "Mr. Chips" garments of plaintiff are ultimately sold to the public in precisely the same manner as the "Mr. Chips" garments of defendants.

Defendants contend that this case should be governed by the rules set forth in Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607 (2d Cir. 1960), certiorari denied, 364 U.S. 909, 81 S.Ct. 271, 5 L. Ed.2d 224 (1960). This was an action by owners of the registered trade-marks "Haymakers" and "Haymakers by Avon" used on women's shoes, to enjoin defend-ants' use of the "Haymaker" mark on women's sportswear apparel. In spite of a finding that some confusion was likely, the Second Circuit Court of Appeals affirmed the judgment of the district court in favor of defendants. The essence of the court's holding is found in the following statement:

"* * * (I)t is perfectly clear that this Court, at least, has never subscribed to such a restrictive reading of the Act (referring to the Lanham Act) as would empower a first user, solely because of his priority, to automatically enjoin the use of the mark by an innocent junior user on related goods in every case where confusion of source of origin is likely. Such may be the law when the junior user, although acting in good faith, *sells products which are in competition* with those of the senior user since injury to its business is then inevitable. (Citation omitted) But we have consistently held that a senior user possesses but two legitimate interests which may properly call for injunctive relief against a use by a junior user on related goods, namely, that he may at some future date desire to expand his business into the related field in which the junior user is operating and that he, in any event, should be able to develop his present business free from the stain and tarnishment which may result from improper trade practices of the junior user." (Original emphasis.) [10]

The facts of the present case do not permit defendants to come within the above stated rule. The two cases are distinguishable on a myriad of factors, and we shall discuss only the most obvious points of disparity.

■ In the first place, the court itself acknowledged that the approach it used in Avon may not be "* * * the law when the junior user, although acting in good faith, *sells products which are in com-*

9. Sunbeam Furniture Corp. v. Sunbeam Corp., 191 F.2d 141, 144 (9th Cir. 1951).

10. Avon, supra, 279 F.2d at 613.

*petition* with those of the senior user * * *." (Original emphasis.) In the present case, it has been shown that not only do both parties sell their products to the segment of the market somewhat loosely categorized as "young men", but that certain of their respective "Mr. Chips" garments have competitive characteristics. Secondly, the Avon rule grants protection to a trade-mark owner if " * * * he may at some future date desire to expand his business into the related field in which the junior user is operating * * *." On this point, the court said:

> "Nor have the plaintiffs ever intended to make or sell women's sportswear. Measured by past and present performance, the possibility of plaintiffs' future expansion into that field is slight indeed * * *."[11]

On the other hand, plaintiff herein had expanded its "Mr. Chips" line to include men's sizes before defendants started using the name in their men's clothing business. Thirdly, the Avon rule states that the trade-mark owner " * * * should be able to develop his present business free from the stain and tarnishment which may result from improper trade practices of the junior user." It is true that defendants herein sell garments which have been and will probably continue to be of a quality generally higher than those of plaintiff, and the probability is also slight that defendants will ever tarnish plaintiff's trade-mark by indulging in improper trade practices. But even the court in Avon acknowledged that such a possibility always exists, and to this we would add the often stated principle of trade-mark law that "No one need expose his reputation to the trade practices of another, even though he can show no pecuniary loss."[12] And, a final important distinguishing factor of the Avon case is found in the court's statement:

> "It is true that the Lanham Act indeed prevents a junior user from claiming good faith *when his use begins subsequent to a prior user's registration under the Act.* But that provision is inapplicable here. For the defendants' use commenced more than two years prior to the effective date of that Act." (Emphasis added.)[13]

This court does not question the present defendants' good faith in adopting the "Mr. Chips" name for use in their clothing business. But the fact remains that this use commenced over three years after plaintiff's "Mr. Chips" trade-mark was registered under the Act, and over four years from the time plaintiff first began using the mark in commerce. The fact that no amount of good faith will avail defendants is demonstrated by the following comment:

> "Under the Lanham Act, however, trade-mark registration is constructive notice of the registrant's claim of ownership of the mark. This provision is one of its most important innovations, for once registration is effected no subsequent adoption and use of the same or a similar mark for the same or similar goods can be justified on a claim of good faith."[14]

The foregoing comparisons should make clear why the approach used by the court in Avon is not one which is applicable to the present situation.

Plaintiff contends, and the court agrees, that the decision in this case should turn on the principles of trade-mark law stated by the Ninth Circuit Court of Appeals in Fleischmann Distilling Corp. v. Maier Brewing Company, cited at note 7 supra. In Fleischmann, the manufacturer and the United States distributor of "Black & White" Scotch whiskey sought to enjoin use of the "Black & White" trade-mark on beer produced by a brewery in Los Angeles, California, and sold exclusively in a chain of

---

11. Id. at 614 of 279 F.2d.

12. Adolph Kastor & Bros. v. Federal Trade Commission, 138 F.2d 824, 826 (2d Cir. 1943).

13. Avon, supra, 279 F.2d at 611.

14. Callmann, op. cit. supra at 2071.

grocery stores in that area. The Ninth Circuit reversed the judgment of the district court and ruled that use of "Black & White" on beer was an infringement of the registered trade-mark "Black & White" used on Scotch whiskey. In an exhaustive opinion the court reaffirms, among others, the principles of trade-mark law that infringement may be found and prohibited in situations where: Use of the registered mark is on goods having different descriptive properties; There is no actual competition between the parties; There has been no showing that defendants used the infringing mark in bad faith; The infringing mark is not an exact duplicate of the registered mark; And there is no proof of specific instances of actual confusion.

In the present case, defendants' use of the "Mr. Chips" name offers a stronger basis for a finding of infringement than did defendants' use of the "Black & White" trade-mark in Fleischmann. In Fleischmann, the court cited the famous case of Yale Electric Corporation v. Robertson, 26 F.2d 972 (2d Cir. 1928), and then it said:

"We are not prepared here to go so far as the Second Circuit did in the Yale Electric case; we are not required to do so for plainly whiskey and beer are more 'related' than locks and flashlights, and less 'foreign' to each other." [15]

Continuing this analogy it is clear that the respective "Mr. Chips" garments of the parties are more "related" and less "foreign" to each other than are whiskey and beer. In addition, the identical size and style of some of plaintiff's and defendants' "Mr. Chips" garments makes direct competition between the parties more probable here than in Fleischmann.

It must be acknowledged that "Mr. Chips" on boys' and young men's clothing is not as strong a mark as is "Black & White" on Scotch whiskey. But based on plaintiff's national and California sales and advertising, the "Mr. Chips" trademark can by no means be considered weak. And like "Black & White", the "Mr. Chips" trade-mark is used in a fictitious, arbitrary and fanciful manner.[16]

The Ninth Circuit concluded in Fleischmann that the average purchaser would be likely to believe that the "Black & White" beer sold by defendants was in some way connected with the producer of "Black & White" Scotch whiskey. The court then said:

"It is not material whether he would think that the makers of the Scotch whiskey were actually brewing and bottling this beer, or whether it was being produced under their supervision or pursuant to some other arrangement with them. He would probably not concern himself about any such detail." [17]

Similarly, this court finds that the average purchaser, upon going into defendants' "Mr. Chips" store and seeing garments bearing the "Mr. Chips" label, would be likely to believe that the store and the garments had some connection with the producer of "Mr. Chips" boys' and young men's clothing. It would matter little whether such purchaser's familiarity with plaintiff's trade-mark arose from advertisements or from actually seeing and perhaps purchasing one of plaintiff's "Mr. Chips" garments. It is well settled that " * * * members of the purchasing public have only general impressions which must guide them in the selection of products." [18] There is a likelihood that a purchaser having such a general impression of plaintiff's "Mr. Chips" products would think that defendants' "Mr. Chips" garments were produced by plaintiff, or that defendants' "Mr. Chips" store was either a retail outlet for plaintiff's products or in some other way affiliated with plaintiff's business. It is this likelihood which the trade-mark laws require us to prevent.

---

15. Fleischmann, supra, 314 F.2d at 160, note 14a.

16. Id. at 154 of 314 F.2d.

17. Id. at 155 of 314 F.2d.

18. Id. at 161 of 314 F.2d.

For the reasons stated in the foregoing opinion, the court holds that plaintiff is entitled to an injunction prohibiting defendants' use of "Mr. Chips" as a trade-name for their men's clothing business and as a trade-mark on the garments which they sell. 15 U.S.C.A. § 1116. Plaintiff is entitled to its costs of this action, and to a separate hearing on the question of damages and profits. 15 U.S.C.A. § 1117. Counsel for plaintiff shall submit proposed findings of fact and conclusions of law, and a decree consistent with this opinion.