**NATIONAL NU GRAPE CO. v. GUEST.**

No. 3488.

Circuit Court of Appeals, Tenth Circuit.

Nov. 5, 1947.

Rehearing Denied Dec. 10, 1947.

Ernest P. Rogers, of Atlanta, Ga. (Troy Shelton, of Oklahoma City, Okl., Smith, Kilpatrick, Cody, Rogers & McClatchey, of Atlanta, Ga., and Embry, Johnson, Crowe, Tolbert & Shelton, of Oklahoma City, Okl., on the brief), for appellant.

F. M. Dudley, of Oklahoma City, Okl., for appellee.

Before PHILLIPS, BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by the National Nu-Grape Company, herein referred to as Nu-Grape, against James D. Guest, trading and doing business variously as Tot Beverage Company, and Tru-Grape Company, herein referred to as Guest, for alleged infringement of NuGrape's registered trademark and for unfair competition. From a judgment in favor of Guest, NuGrape has appealed.

The facts are not in dispute. NuGrape is a Georgia corporation, located in Atlanta, Georgia. It and its predecessor have been manfacturing and marketing a carbonated grape drink since 1921, under the registered trade-mark of NuGrape. NuGrape, exclusive of its predecessor, has expended more than $800,000 in advertising its bev-

erages, all of which advertising featured the trade-mark NuGrape, and sells its product under that name in a majority of the states of the United States, including the State of Oklahoma. Its sales have aggregated more than $5,000,000. The trade name NuGrape was registered in 1923, in the United States Patent Office under the Federal Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq. On August 29, 1939, NuGrape registered its trade-mark with the Secretary of State of Oklahoma, and received as of that date a certificate to that effect.

Guest has, since 1942, been engaged in manufacturing and marketing a grape drink under the name Tru-Grape, which he represents as a valid trade-mark for his product. His principal place of business is located at Duncan, Oklahoma, and his trade territory is largely the southeastern part of Oklahoma and Texas. In 1942, the defendant registered his trade-mark with the Secretary of State of Oklahoma. NuGrape protested the use of the name of Tru-Grape by Guest as being an infringement of its trade-mark, but to no avail. Prior to the institution of this suit, NuGrape sent two representatives into Guest's trade territory, who, in the guise of customers, called upon the dealers in various towns and orderd either NuGrape or Tru-Grape. In about one-fourth of the places at which they called, they were served one drink though they had asked for the other.

The trial court found that the consuming public was not confused in purchasing either of these drinks, and that while a mistake might be made when all reliance was placed on pronunciation, the bottles are totally different in size, shape and appearance, and the tops are not similar; that the arrangement, color, design and general appearance of the labels and markings on the Tru-Grape bottles are in marked contrast to those of NuGrape, so that a customer would recognize instantly that he had not received what he had asked for if served a Tru-Grape on an order for Nu-Grape, or vice versa. The trial court concluded, as a matter of law, that the term NuGrape was not a valid trade-mark because it was descriptive of the product; that it was doubtful whether it had acquired a secondary meaning since the evidence showed its significance to the public mind was only in the kind of product rather than its source; but regardless of whether it had acquired a secondary meaning, plaintiff failed to show facts justifying an inference of unfair trade practices in Guest's use of the term "Tru-Grape". A decree was accordingly entered for Guest from which this appeal is prosecuted.

It is well established that the mere registration of a term as a trade-mark does not establish that term as a valid trade-mark. Registration gives rise to a presumption of validity but such presumption is rebuttable. When a trade-mark is questioned, its validity must be established. It has long been recognized that a registered trade-mark is not valid when the term used is merely descriptive of the product, or of its ingredients, qualities or characteristics.[1] The gist or value of the trade-mark is to signify the origin or source of a product; to provide a symbol for the article to aid the manufacturer in advertising and selling. A descriptive mark is bad for two reasons: First, because it does not advise the public that the article comes from a single source; and, second, that if so, since the word is descriptive of the goods, the protection of the word as a trade-mark would be an infringement upon common speech, which, in the use of the word, likewise is descriptive.[2]

The term in controversy here, "Nu-Grape", is made up of the words "new" misspelled, and "grape". The cases dealing with such words, and with words alleged to be an infringement on their use, are legion and no particular purpose would

---

[1] William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L. Ed. 1161; Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Van Camp Sea Food Co. v. A. B. Stewart Organizations, 50 F.2d 976, 18 C.C.P.A. (Patents) 1415.

[2] See Oakland Chemical Co. v. Bookman, 2 Cir., 22 F.2d 930, and cases there cited.

be served in citing them or in analyzing the facts therein.[3] The trial court's finding that the term "NuGrape" is descriptive of the plaintiff's grape product, and therefore, is not a valid trade-mark, is well founded.

But although one may not have a right to have a trade name registered as a trade-mark, and under such law acquire the protection of the use of such name, he may acquire the right to the protection of such a term by common law and exclusive of any trade-mark act, if, through usage, the term has acquired a secondary meaning, that it has come to indicate that the goods in connection with which it is used come from a single source, manufacturer or producer. If one can show that his mark is endowed with this quality, that the public identifies his mark with goods manufactured by him, then he is entitled to protection in its use. The crux of a secondary meaning is the origin of the goods from a single source. As stated by Judge L. Hand, in Bayer Co. v. United Drug Co., D.C., 272 F. 505, 509, the public must understand by the term. "That it came from the same single, though, * * * anonymous, source from which they had got it before." [4]

This common law right of one who establishes that his term has acquired a secondary meaning is entitled to protection in the courts against all who infringe upon it in much the same manner as a right to a term derived from its registra-tion pursuant to a trade-mark act. The essence of the wrong from the violation of the common law right is the sale of goods made by one manufacturer for those made by another.[5] One will not be permitted by unfair trade practices to mislead people into supposing that his goods are those of another.[6]

Assuming, without deciding, that NuGrape's meager evidence on this point establishes that the term "NuGrape" has acquired a secondary meaning which is entitled to protection, still it must fail through its failure to show an infringement by unfair trade practices on the part of Guest. The most that can be said is that there is some similarity in sound between the words "NuGrape" and "Tru-Grape". The evidence fails to show any confusing similarity in appearance, verbal translation of the pictures or designs used on the bottles, or any similarity in the appearance or construction of the bottles themselves. The evidence completely fails to meet the test that the ordinary prospective purchaser exercising due care under the circumstances would be misled.[7]

The trial court was correct in its conclusion of law that NuGrape had failed to show that defendant was "palming off" his product as that of the product of the plaintiff. We find no error in the Findings of Fact or Conclusions of Law of the trial court, and the judgment appealed from is, therefore, affirmed.

---

[3] For some of these cases, see Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536; Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 40 A.L.R. 424; Griffin Manufacturing Co. v. It Shoe Polish Co., 4 Cir., 80 F.2d 514; Steem-Electric Corp. v. Herzfeld-Phillipson Co., 7 Cir., 118 F.2d 122.

[4] See Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Coca-Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189.

[5] Armstrong Paint & Varnish Co. v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195.

[6] Bayer Co. v. United Drug Co., D.C., 272 F. 505.

[7] Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568; Restatement of Law of Torts (A.L.I.) Par. 729.