**JEAN PATOU, INC., Plaintiff,**

v.

**JACQUELINE COCHRAN, INC., Defendant.**

United States District Court
S. D. New York.

Feb. 1, 1962.

Alex Friedman, of Blum, Moscovitz, Friedman & Blum, New York City, for plaintiff.

Kenneth H. Murray, of Sawyer, Kennedy & Murray, New York City, for defendant.

BONSAL, District Judge.

This is an action instituted by Jean Patou, Inc. as the owner of the registered trade-mark JOY for perfumes and toilet waters, seeking to enjoin the defendant, Jacqueline Cochran, Inc., from using the legend JOY OF BATHING on the package and container of its cosmetic bath product. The plaintiff, a New York corporation, and defendant, a Delaware corporation, are both distributors of perfumes, cosmetics and toilet preparations, and conduct an interstate business in connection therewith.

The Court has jurisdiction of the parties and of the subject matter. 15 U.S.C. § 1121, 15 U.S.C.A. § 1121; 28 U.S.C. § 1338(b).

The plaintiff has used the trade-mark JOY in interstate commerce for perfumes, toilet water, face powder, dusting powder and soap since October 1931. Defendant admits receipt of a notice of infringement from the plaintiff in November of 1959, and has continued to distribute JOY OF BATHING.

Plaintiff is the owner of United States Registration No. 529,337 issued to it on August 22, 1950 for the trade-mark JOY

for perfumes and toilet waters. This mark has become incontestable by reason of the plaintiff's compliance with 15 U.S. C. §§ 1058, 1065, 15 U.S.C.A. §§ 1058, 1065, which occurred prior to the defendant's first use of JOY OF BATHING in September, 1959. At that time, the defendant commenced the distribution and sale of its cosmetic preparation for the bath, JOY OF BATHING, in the Southern District of New York and in interstate commerce.

The evidence produced at the trial establishes that the plaintiff uses its trade-mark JOY in conjunction with its several products. For example, plaintiff markets a soap as "Savon Joy" at a price of $2.50 per package retail; a toilet water as "Eau de Joy" at a price of $12.-00 retail for 1½ ozs.; a perfume, "Parfum Joy", at a price of $50. an ounce; a face powder, "Poudre Joy", at $6.00 for 3 ozs.; and a bath powder, "Poudre de Toilette Joy", at $7.50 for 3 ozs. The packages used by the plaintiff in its various products differ in color and style from each other and from the packaging of the defendant's products.

The defendant markets its products under the name "Flowing Velvet" in a distinctive package. Each package is of the same color and texture and features the words "Flowing Velvet" and the name of the defendant's company, Jacqueline Cochran. The defendant's line includes Flowing Velvet Make-up at $4.00 retail, Flowing Velvet Radiant Masque at $5.00, Flowing Velvet Eye Cream at $5.00, Flowing Velvet Lipstick at $3.50 and Flowing Velvet Pressed Powder at $5.00. The defendant's cosmetic bath product, JOY OF BATHING, which sells at $5.00 a bottle, is packaged as part of the Flowing Velvet line. On the face of the package, under "Flowing Velvet" are prominently featured the words, "JOY OF BATHING bathe in fragrance as you bathe away dry skin". On one side of the package these words are displayed without reference to "Flowing Velvet".

It has been established that both plaintiff's and defendant's cosmetic bath prod-uct are advertised in magazines of national circulation. The president of the plaintiff testified that his company has expended some $400,000. over the past ten years in advertising its JOY line. Defendant has advertised its Flowing Velvet line over the past ten or twelve years and the only testimony on the subject is to the effect that it advertises its entire line and not the several products individually.

Plaintiff predicates its right to relief on two claims: (1) trade-mark infringement under the Lanham Act, 15 U.S.C. §§ 1051–1127, 15 U.S.C.A. §§ 1051–1127, and (2) unfair competition, 28 U.S.C. § 1338(b).

The common law of trademarks is a part of the broader law of unfair competition. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916); S. C. Johnson & Son v. Johnson, 175 F.2d 176, 178 (2d Cir.), cert. denied, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949). It is a changing and expanding area of the law, but its fundamental purpose is to prevent a person from passing off his goods as the goods of another. The critical question is whether customers are, or may be, misled. Is the defendant taking advantage of the goodwill and business reputation established by the plaintiff?

There is, however, a fundamental distinction to be drawn between trade-mark infringement and unfair competition. Trade-mark infringement rests on a relatively narrow principle compared to unfair competition. The essential element of a trade-mark is the exclusive right of its owner to use a word or device to distinguish his product. On the other hand, a claim of unfair competition considers the total physical image given by the product and its name together. Thus unfair competition exists if the total impression of package, size, shape, color, design and name upon the consumer will lead him to confuse the origin of the product. 1 Nims, Unfair Competition and Trade Marks § 1 (4th ed. 1947).

## PLAINTIFF'S CLAIM OF TRADE-MARK INFRINGEMENT

█ The test of infringement of a protected mark is confusing similarity. Thus under the Lanham Act a court must decide whether the defendant's use "is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of [the plaintiff's] goods or services". 15 U.S.C. § 1114(1), 15 U.S.C.A. § 1114(1).

█ Plaintiff having proven ownership of the trade-mark JOY and its use in a going business, is entitled to be protected from the use of such mark by others on goods which customers may confuse with its products. Standard Brands, Inc. v. Smidler, 151 F.2d 34, 36 (2d Cir. 1945).

In deciding whether there is confusion as to the source of origin, two questions must be answered: (1) Is the use of the name JOY by the plaintiff such that it is understood by the public to be the mark that identifies the plaintiff and his products? (2) If so, does the use by the defendant of JOY OF BATHING cause purchasers to buy defendant's goods believing that they are getting goods distributed by the plaintiff?

█ In the instant case the mark employed, JOY, is not one which is fanciful or arbitrary in relation to the type of product on which it is used. Indeed it could be said to be descriptive of the product's end effect upon the user. Hence plaintiff must show that JOY has become known in the market place as the name for goods coming from or through a particular source. "This special significance, once acquired, is thereafter its primary meaning in the market, though lexicographically it may have an earlier, different meaning." Restatement, Torts, § 716, comment a (1938).

█ This "special significance" is commonly called "secondary meaning". Whether or not a mark has acquired a secondary meaning is a question of fact in each case. Restatement, Torts, § 716, comment b (1938). The burden of proof rests with the plaintiff. 3 Callman, Unfair Competition and Trade-Marks 1237 (2d ed. 1950).

There are two extremes in the choice of a mark. A product may have a fanciful name or, at the other extreme, a name which is primarily descriptive. In between there exists a large middle ground of names, which while providing some description of the product, nevertheless demand an effort of the imagination to be understood as descriptive. These names must be taken in a suggestive or figurative sense. 1 Nims, Unfair Competition and Trade-Marks § 41 (4th ed. 1947).

JOY stands in this middle ground. Its secondary meaning must thus be more apparent before it will be protected.

The plaintiff argues that by virtue of the issuance of the now incontestable JOY registration it has a presumption in its favor that the mark has an established secondary meaning. Iowa Farmers Union v. Farmers' Educational & Coop. Union, 247 F.2d 809, 816 (8th Cir. 1957).

█ A descriptive mark generally is not registrable. 15 U.S.C. § 1052(e), 15 U.S.C.A. § 1052(e). An applicant may, however, register a descriptive mark if he can demonstrate to the Commissioner that the mark has become distinctively associated with his product by five years of substantially exclusive and continuous use. 15 U.S.C. § 1052(f), 15 U.S.C.A. § 1052(f). Registration under § 1052(f) might support the contention that such registration is presumptive evidence of secondary meaning.

However, it does not follow that the plaintiff's registration, which does not claim the benefit of § 1052(f), should also be held to be presumptive evidence of the mark's secondary meaning.

█ Registration under the Lanham Act becomes prima facie evidence of compliance with the requirements of registration. 15 U.S.C. § 1057(b), 15 U.S.C.A. § 1057(b); 2 Nims, Unfair Competition and Trade-Marks § 344 (4th ed. 1947). If, in satisfaction of such re-

quirements, it was not necessary for the applicant to make the demonstration required by § 1052(f) because its mark was otherwise registrable, it cannot claim the presumption which compliance with this special section might have given.

There is evidence of the use of the word JOY by others on products which have not been shown to compete with those of the plaintiff and defendant. ("Joy", a liquid detergent manufactured by Procter & Gamble; and "Joy Suds", a bubble bath distributed by the Hylo Company in Texas which sells for $.24). Such use, even if prior to that of the plaintiff, does not help this defendant but it may limit the scope of plaintiff's mark. Standard Brands, Inc. v. Smidler, supra, 151 F.2d at 36; Admiral Corp. v. Penco, Inc., 203 F.2d 517, 521 (2d Cir. 1953).

The use by the plaintiff of the mark JOY for over thirty years coupled with continuous advertising may have established a secondary meaning, at least as to products which are in direct competition with those on which it is used. However, assuming arguendo (1) that plaintiff has established a secondary meaning for its mark, and (2) that defendant's product is in direct competition, we come to the second question: Does the defendant's use of JOY OF BATHING cause a purchaser to buy its goods in the belief that the goods are distributed by the plaintiff? I think not.

The use of a word such as "joy" which is in the public domain is only unfair when a competitor uses it in its trade-mark or secondary sense. The competitor is free to use the word in its common or primary sense. The utmost that the plaintiff here may insist upon is that no one use its mark in an unfair way. Barton v. Rex-Oil Co., 2 F.2d 402, 404, 40 A.L.R. 424 (3rd Cir. 1924).

The question then becomes a matter of judgment as to which side of the line the defendant's use of the word "joy" falls. While it is desirable to protect a person who has built up a public association with certain products

under his trade-mark from having his business taken by somebody else, it is also undesirable to block the channels of expression by giving protection to everyone who may go out and appropriate an ordinary descriptive word for his own business use. Q-Tips, Inc. v. Johnson & Johnson, 206 F.2d 144, 146 (3rd Cir.), cert. denied, 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 (1953).

The defendant's use of the word "joy" in JOY OF BATHING falls on the side closer to its primary meaning, and hence does not invade any secondary meaning with which the plaintiff's use may have surrounded the word. It may be asked why the defendant chose this particular word to describe his product? There is nothing in the record to show that it was done to mislead the public into believing it is purchasing the product of the plaintiff. Rather, it is used to evoke a certain emotion on the part of the prospective purchaser. The use of the phrase JOY OF BATHING is designed to suggest the pleasure which will accompany the use of defendant's product in one's bath, and thus performs a descriptive function.

To give the plaintiff the protection it seeks would be the first step in bestowing upon it a virtual monopoly of any phrase commencing with the word "joy". I therefore find that defendant's use of JOY OF BATHING on its Flowing Velvet bath preparation does not infringe the valid trade-mark JOY of the plaintiff.

## THE CLAIM OF UNFAIR COMPETITION

The essence of the law of unfair competition is fair play. Fair play to the consumer and to one's competitor. Competition may be vigorous but not deceptive, Eastern Wine Corp. v. Winslow-Warren, Ltd., 137 F.2d 955 (2d Cir.), cert. denied, 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452 (1943). No one "shall sell his goods in such a way as to make it appear that they come from some other source". American-Marietta Co. v. Krigsman, 275 F.2d 287, 289 (2d

Cir. 1960). Taking the total effect of defendant's product upon the eye and mind of the prospective purchaser, will there be confusion of origin? The fact that the plaintiff does not distribute a product identical to defendant's bath preparation will not excuse the defendant if confusion is likely. Nor does the lack of evidence in the case of actual confusion deny the plaintiff relief, for such showing is not necessarily required. Admiral Corp. v. Penco, Inc., supra, 203 F.2d at 520; La Touraine Coffee Co. v. Lorraine Coffee Co., 157 F.2d 115, 117 (2d Cir.), cert. denied, 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663 (1946). In every case "the issue of confusing similarity is an issue of fact as to the probable or actual reactions of purchasers". Restatement, Torts, § 728 (1938) cited in Q-Tips, Inc. v. Johnson & Johnson, supra, 206 F.2d at 147. The prospective purchaser is presumably a woman. It is the likelihood of confusion on her part which must be considered. J. R. Wood & Sons, Inc. v. Reese Jewelry Corp., 278 F.2d 157, 159 (2d Cir. 1960).

 Key factors in determining the probability of confusion are the similarity of appearance and the degree of care likely to be exercised by purchasers. The decision as to the former is made on the basis of the total effect of the product, rather than on a comparison of individual features. As to the latter, the buying habits of purchasers of cosmetics are significant. Restatement, Torts, § 729 (1938).

In the present case the defendant has sold its bath preparation as a part of its Flowing Velvet line, packaged in distinctive containers differing markedly in appearance, color, shape and size from those of the plaintiff. Its trade-mark, "Flowing Velvet", and the name of the defendant, Jacqueline Cochran, appear prominently on the package. In addition, the defendant has not used the word JOY alone but as part of the phrase: "JOY OF BATHING bathe in fragrance as you bathe away dry skin".

· The women who buy plaintiff's and defendant's products are apt to make an individual choice. There is a vast array of cosmetics on the market varying greatly in price and in the claims made by their producers. The products are not all alike; their potential customers realize this, and tend to be selective.

 I find that there is no significant likelihood that purchasers of cosmetics would be misled into believing that the defendant's product comes from the same source as the plaintiff's. Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607, 615 (2d Cir.), cert. denied, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960). The defendant's bath preparation, JOY OF BATHING, does not unfairly compete with the products of the plaintiff.

### THE CLAIM OF DILUTION

The plaintiff claims that the use of the notation JOY OF BATHING by the defendant is a dilution of the distinctive quality of the plaintiff's trade-mark JOY.

The conventional trade-mark doctrine is that there must be an identification of a symbol with a source. There exists a minority view that regards this identity with source as unimportant, and points to the undoubted advertising and commercial values that inhere in a successful symbol. This view would protect these values from dilution, that is, against any use of the symbol that may drain off any of the potency of the mark. Kaplan & Brown, Cases on Copyright 492 (1960). Only four states have given this concept statutory recognition. New York is among them. N.Y.General Business Law, § 368–c(3). The vice to be avoided is the "likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark * * * notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services".

 The doctrine has been given little weight in the Second Circuit. Avon Shoe Co. v. David Crystal, Inc., 171 F.Supp. 293, 299 (S.D.N.Y.1959), aff'd 279 F.2d 607 (2d Cir.), cert. denied, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224

(1960). I do not think the plaintiff is entitled to relief under it here. It may also be argued that the Lanham Act rejects the dilution doctrine as a basis for relief in trade-mark cases in that the trade-mark owner must prove the likelihood of confusion in order to recover. 15 U.S.C. § 1114(1), 15 U.S.C.A. § 1114(1).

## CONCLUSION

The foregoing shall constitute the Court's findings of fact and conclusions of law.

Judgment will be entered for the defendant.