**EDUCATIONAL DEVELOPMENT CORPORATION, Appellant,**

v.

**The ECONOMY COMPANY, Appellee.**

No. 76–1425.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 18, 1977.

Decided Sept. 8, 1977.

Russell H. Harbaugh, Jr., Tulsa, Okl. (Ford F. Farabow, Jr., Tipton D. Jennings, IV, Washington, D. C., James L. Kincaid, Tulsa, Okl., of counsel; Finnegan, Henderson, Farabow & Garrett, Washington, D. C., and Conner, Winters, Ballaine, Barry & McGowen, Tulsa, Okl., on the briefs) for appellant.

Jerry J. Dunlap, Oklahoma City, Okl. (Dunlap, Codding & McCarthy, Oklahoma City, Okl. and Royce H. Savage, Tulsa, Okl., on the briefs) for appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is a trademark case within federal jurisdiction under 28 U.S.C. § 1338. Plaintiff claims infringement of its registered valid trademark and unfair competition. After trial without a jury, the district court held that the trademark was not properly registered because it was descriptive, see 15 U.S.C. § 1052(e)(1), and denied the unfair competition claim. The plaintiff has appealed. We affirm.

Plaintiff-appellant, Educational Development Corporation (EDC), publishes and sells educational materials. In 1968 it began the development of products for use in connection with the "continuous progress" concept of education. This concept allows a student to commence a program of study at a level best suited to his knowledge of the subject and to progress at a rate suited to his individual capability. Traditional classroom education emphasizes a uniform starting point for all students and uniform advance-

ment. The concept and term "continuous progress" have been recognized and used by educators since at least the 1930's.

In March, 1970, EDC began to market its "continuous progress" products for various branches of learning. The product is a rectangular box holding various cards, pamphlets, and cassette tapes. This type of product is known in the educational publishing industry as a "laboratory."

In May, 1970, EDC filed a trademark application with the United States Patent Office for registration of the term "Continuous Progress." The application was rejected on the ground that the mark was merely descriptive of the product and, under 15 U.S.C. § 1052(e)(1), could not be registered. On the petition of EDC for review, the Patent Office reversed its ruling and on February 22, 1972, granted registration.

EDC advertised and sold its products on a nation-wide basis. At time of trial it had spent about $134,500 in advertising and promotion and had sold over 49,200 "laboratories" for total sales exceeding $6,380,000.

Defendant-appellee, Economy Corporation, is also a publisher of educational materials. In June, 1970, it purchased from three educators the rights to "Continuous Progress in Spelling," a product which the educators had been marketing on a limited scale since 1966. The product was also in "laboratory" form with pamphlets, cards, and cassette tapes in a rectangular case. After making minor changes in the product, Economy began to market it in February, 1972. EDC protested Economy's activities. Economy applied for registration of the phrases "Continuous Progress in Spelling," and "Continuous Progress." The applications were rejected.

In September, 1972, Economy began a national promotion and sales campaign for its products. EDC then brought this suit claiming trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051 et seq., and unfair competition. By counterclaim, Economy asserted invalidity of EDC's trademark. The district court held that the term "continuous progress" could not be registered as a trademark because it was descriptive of the product. The court also held that EDC had no common law exclusive right to the mark because the evidence did not show that the mark had acquired a secondary meaning through usage, and denied the claim of unfair competition.

■ A trademark is a distinctive mark, symbol, or emblem used by a producer or manufacturer to identify and distinguish his goods from those of others. See *Drexel Enterprises, Inc. v. Richardson,* 10 Cir., 312 F.2d 525, 526–527. A Patent Office certificate of registration gives rise to a presumption of the validity of the trademark. 15 U.S.C. § 1057(b). That presumption may be rebutted. *National Nu Grape Co. v. Guest,* 10 Cir., 164 F.2d 874, 876, cert. denied 333 U.S. 874, 68 S.Ct. 903, 92 L.Ed. 1150.

■ Eligibility to trademark status and degree of protection afforded words and terms may be divided into four classes. In ascending order the classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 2 Cir., 537 F.2d 4, 9. EDC urges that "Continuous Progress" falls into the suggestive class. Economy asserts that the term is descriptive. Neither party claims that the term is generic, arbitrary, or fanciful.

■ The Lanham Act provides, 15 U.S.C. § 1052(e), that no trademark may be registered which "when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them." A mark that is merely descriptive of the characteristics, qualities, use or functions of the goods cannot be registered. See *Bardahl Oil Company v. Atomic Oil Company of Oklahoma,* 10 Cir., 351 F.2d 148, 150, cert. denied 382 U.S. 1010, 86 S.Ct. 619, 15 L.Ed.2d 526. Merely descriptive terms may not be registered because they do not advise the buyer that the product comes from a single source and because trademark protection would infringe on common speech. *National Nu Grape,* 164 F.2d at 876.

The suggestive class was judicially developed to fill the need for protection of marks that were neither exactly descriptive nor fanciful. *Abercrombie & Fitch,* 537 F.2d at 10; see also *Union Carbide Corporation v. Ever-Ready Incorporated,* 7 Cir., 531 F.2d 366, 378–379, cert. denied 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94. The distinction between descriptive and suggestive marks is difficult. The determination is often based on intuitive reactions rather than analytical reasoning. *Union Carbide,* 531 F.2d at 379. A distinguishing test, originally used in *General Shoe Corporation v. Rosen,* 4 Cir., 111 F.2d 95, 98, has found increasing support in the courts. The distinction is that suggestive terms are those which require the buyer to use thought, imagination, or perception to connect the mark with the goods. Descriptive terms are those which directly convey to the buyer the ingredients, qualities, or characteristics of the product.

The determination of whether a mark is descriptive requires consideration of the meaning of the term or mark to the prospective purchasers and not to the public in general. See e. g. *Blisscraft of Hollywood v. United Plastics Company,* 2 Cir., 294 F.2d 694, 699, and *Application of Andes Candies Inc.,* Cust. & Pat.App., 478 F.2d 1264, 1266. In the instant case the record shows, and the court found, that the potential purchasers are persons in the educational field who are both sophisticated and discriminating in their purchases of educational material. For over 30 years, the term "continuous progress" has meant to educators a method of instruction allowing students to begin study of a subject at different levels related to their proficiency in the subject and to advance at a rate suited to their abilities.

EDC's "continuous progress" products use this recognized concept of education. By adopting "Continuous Progress" as its mark, EDC directly conveyed to educators the most important characteristic of its product. The fact that the mark by itself does not indicate the format, laboratory nature, or other features of the product is irrelevant. A mark to be merely descriptive need not directly convey all of a product's characteristics, uses, or functions but need only impart directly a crucial, important aspect of the product. The mark in question is a term which, to those in the educational field, indicates the use and function of the product. Accordingly, it is merely descriptive. See *Bardahl,* 351 F.2d at 150.

Another approach to the problem fortifies the conclusion which we have reached. To determine whether a mark is descriptive or suggestive, courts and commentators have considered whether a competitor would need to use the term in describing his product to purchasers. See Restatement, Torts, § 721, Comment (a), pp. 579–580; 1 Nims "Unfair Competition and Trademarks" § 201; and *Union Carbide,* 531 F.2d at 379. In its promotional material, EDC used "continuous progress" in its ordinary sense to describe the educational concept present in its product. It is undisputed that competitors might also need to use the term to describe their products which are based on the same concept. Hence, the use of the term infringes on common speech in the educational field. See *National Nu Grape,* 164 F.2d at 876. We conclude that the term "Continuous Progress" is merely descriptive. The evidence rebuts and overcomes the presumption of validity which comes from registration. No doubt the Patent Office did not have before it the evidence contained in the record before the court. Be that as it may, we conclude that the mark was not entitled to registration.

Even though a trademark may not be validly registered under the Lanham Act because it is merely descriptive, common law will afford protection similar to that under the Act if the mark through usage has become, to the purchasing public, associated with a particular manufacturer or producer. See e. g. *National Nu Grape,* 164 F.2d at 877. To acquire this secondary meaning, the "descriptive words must 'have been used so long and so exclusively by one producer with reference to his' goods or articles 'that, in that trade and to that

branch of the purchasing public, the word or phrase [has] come to mean that the article' is 'his product.'" *Bardahl,* 351 F.2d at 150. The determination of whether a mark has acquired a secondary meaning is a factual question, and the pertinent findings of the trial court will not be disturbed unless clearly erroneous, Ibid., 351 F.2d at 151; and *Union Carbide,* 531 F.2d at 381.

The trial court found that "Continuous Progress" had not acquired the requisite secondary meaning. In its attack on the finding, EDC points to the testimony of its president and one of its regional sales managers that the mark had become associated with EDC products. EDC also showed that it had received two orders for the Economy product mistakenly addressed to EDC. We are not impressed. The Economy product "Continuous Progress in Spelling" has been on the market since 1966, four years before EDC's first sale of its product and six years before registration of the contested mark. The Economy sales covered a nine-state area. The EDC use of the term was neither first nor exclusive.

To support its arguments for secondary meaning and unfair competition, EDC says that the test is likelihood of confusion. See *Standard Oil Company v. Standard Oil Company,* 10 Cir., 252 F.2d 65, 72–73. The difficulty is that EDC produced no evidence of actual confusion. The only evidence on likelihood comes from the EDC receipt of two misdirected orders. Both EDC and Economy were dealing with sophisticated buyers familiar with the educational materials in question. We are convinced that the EDC mark has no secondary meaning and that the charge of unfair competition is without merit.

Affirmed.