**NABISCO BRANDS, INC. and Nabisco, Inc., Plaintiffs,**

v.

**The QUAKER OATS COMPANY, Defendant.**

Civ. A. No. 82–2934.

United States District Court, D. New Jersey.

Sept. 20, 1982.

---

Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, P. C. by Joseph J. Fleischman, Newark, N.J., Taggart & Colucci by Frank J. Colucci, Jeanne T. Fennell, Marius J. Jason, and Susan Progoff, Gary H. Fechter, New York City, for plaintiffs.

Mattson, Madden & Polito by Andrew S. Polito, Newark, N.J., Howrey & Simon by John S. Kingdon, and Doris E. Long, Washington, D.C., Michael T. Welch, Chicago, Ill., for defendant.

## OPINION

SAROKIN, District Judge.

### STATEMENT OF FACTS

Plaintiffs, Nabisco Brands Inc. and Nabisco (hereinafter "Nabisco"), instituted this action against defendant, The Quaker Oats Company (hereinafter "Quaker"), alleging trademark infringement and unfair competition. Nabisco contends that Quaker has infringed its registered trademark CREAM OF WHEAT ® by manufacturing and marketing Quaker CREAMY WHEAT and that the manufacturing and marketing of such product constitutes unfair competition. Nabisco seeks a temporary restraining order pursuant to Fed.R.Civ.P. 65.

Substantially all of the facts are undisputed and neither party requested an evidentiary hearing in connection with the application for a temporary restraining order.

### A. NABISCO

Plaintiff Nabisco Brands Inc. was formed in July 1981 with the merger of Standard Brands Inc. and Nabisco Inc. Nabisco Brands Inc. is the exclusive user of the trademark CREAM OF WHEAT. Nabisco Inc. is the owner of the CREAM OF WHEAT trademark registered in the United States Patent Office and Trademark Office beginning in January of 1900. The registration was renewed in 1926, 1927 and in 1940.

Nabisco Inc., originally known as The National Biscuit Company, has been in the business of manufacturing, marketing and distributing grocery food products since 1898. In 1962 Nabisco Inc. purchased the Cream of Wheat Corporation, which had been marketing CREAM OF WHEAT, an enriched farina, since 1895. CREAM OF WHEAT cereal has been advertised extensively without interruption since that time. Sales of CREAM OF WHEAT cereal have been extensive.

As set forth in the affidavit of the controller of the Grocery Products Division of plaintiff, sales of CREAM OF WHEAT have increased from $17,900,000 in 1969 to $45,000,000 in 1981. Substantial advertising and promotional expenditures for CREAM OF WHEAT have been made over the years; these expenditures have increased from $1,400,000 in 1969 to $3,500,000 in 1981. During that entire period such expenditures were no less than $800,000, and averaged in the $1,000,000–$2,000,000 range. Due to the foregoing advertising, marketing and sales CREAM OF WHEAT has become extremely well-known.

The earliest use of the trademark CREAM OF WHEAT also dates back to 1895. One of the earliest advertisements appeared in the October 1896 issue of the Ladies Home Journal. Since then the advertisements have appeared in all of the major magazines, many of which were prepared by well-known painters or illustra-

tors. The court has examined all of the advertisements submitted and they indeed do portray a unique and continuous advertising campaign. A great deal of the advertising has become a recognized art form.

The advertising has also reflected the various changes in the product and in the packaging, but the packaging has maintained a certain consistency, certainly over the last decade. With the advent of television plaintiff has engaged in extensive advertising on numerous popular television programs.

## B. QUAKER OATS

Quaker Oats is the largest selling cereal, hot and cold combined, in the United States. From time to time in the past Quaker has attempted to compete with an enriched farina without much success. Nabisco's CREAM OF WHEAT has continued to be the largest selling brand of enriched farina in the United States. A fifty-two week survey conducted by Selling Area Marketing Inc. ending July 23, 1982 found that CREAM OF WHEAT had a 92.5 per cent dollar share of the farina and enriched farina market. Defendant does not contest plaintiff's dominance of the marketplace.

What has prompted the present litigation is the plan of Quaker to manufacture, distribute and sell its product entitled CREAMY WHEAT, an enriched farina. Production of said product began at Quaker's manufacturing facilities on August 23, 1982. Distribution and marketing has begun and it is anticipated that retail stores will begin selling the product on or about October 1 and thereafter in time for the "cereal season." It should be noted that the trademark "Quaker" and the characterization of the "Quaker Man" in pilgrim dress are also extremely old and strong trademarks.

## C. COMPARISON OF THE TRADEMARKS AND TRADE DRESS OF THE TWO PRODUCTS

To begin with, it is to proclaim the obvious to say that CREAM OF WHEAT and CREAMY WHEAT are similar, if not identical. Three letters separate them. The similarity approaches identity when the words are spoken rather than seen. Defendant came as close to duplication of the name that it could without utilizing the name itself. Defendant contends that the words "cream of wheat" were originally devised to denote the high quality of the product, i.e., the "cream of the crop" and were not meant to describe the texture of the product. Defendant contends that in contrast, the description "Creamy Wheat" connotes a characteristic of the product indicating that it has a consistency or appearance of a creamlike product. Furthermore, it is undisputed that there are other products on the market called Cream of Rice, Cream of Oats and Cream of Rye.

In addition to the near identity of the product name, plaintiffs claim that defendant's trade dress is confusingly similar to that of plaintiffs'. Plaintiffs point to the following:

a. Quaker's packaging displays CREAMY WHEAT on the front, side and back panels.

b. The front panel prominently displays the statement "COSTS LESS than other CREAMY WHEATS."

c. On the back panel the following appears: "The familiar taste and texture is similar to CREAM OF WHEAT and other creamy wheat cereals you've always loved, but is now yours at a surprising savings."

d. A legend on the back panel bears the inscription "CREAM OF WHEAT ® is a registered trademark of Nabisco Brands, Inc." (Counsel for both parties concede that such disclosure is not mandated by any applicable law.)

e. A comparison of the 28 oz. package of CREAMY WHEAT farina with Nabisco's 28 oz. package of CREAM OF WHEAT enriched farina (Exhibit Q) demonstrates that both packages have dark red backgrounds and use the colors blue, yellow and white.

f. The word "quick" appears directly above CREAMY WHEAT as it does above the trademark CREAM OF WHEAT and

both CREAMY WHEAT and CREAM OF WHEAT appear on the bottom half of their respective packages followed by the words "enriched farina."

g. Each package features a picture of a bowl of cereal and the portrayal of a man in the top portion of the package.

Defendant Quaker, on the other hand, emphasizes the dissimilarities between the trade dress and packaging of their product as compared to that of Nabisco:

a. There is no similarity between the men portrayed in the respective packages: The world-famous Quaker pilgrim figure is approximately one inch tall and appears in the upper left-hand corner of the Quaker package and Nabisco's famous chef is approximately three to four inches tall and is centered in the top half of the Nabisco box.

b. The Quaker pilgrim is pictured in close association with the company name Quaker, which appears fourteen times on the package.

c. Although both packages depict a bowl of cereal, which is not uncommon, the bowl of cereal on the Nabisco package is very small, particularly in comparison to the figure of the chef. The bowl of the cereal on the Quaker package dominates the entire front of the package and displays the creamy-like appearance and consistency of the product.

d. The small bowl on the Nabisco package is a stylized drawing viewed from the side without the contents being visible, whereas the large bowl on the Quaker package is viewed from above, is photographically realistic and the contents of the bowl are displayed.

e. The type faces of CREAM OF WHEAT and Quaker CREAMY WHEAT consist of different type styles and colors.

f. The comparison made with CREAM OF WHEAT and other creamy wheats emphasizes the difference rather than the similarity between the two products.

## DISCUSSION OF THE LAW

■ A party seeking temporary and preliminary injunctive relief must show both that it will suffer irreparable harm if the restraining relief is denied and that the moving party is likely to succeed at the ultimate trial on the merits of its claim. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975). In determining whether the requested restraints are necessary, the court must examine whether the plaintiffs' alleged injury is imminent, *Ammond v. McGahn,* 532 F.2d 325, 329 (3d Cir. 1976), and must also give careful consideration to the interests of both sides. *Doran,* 422 U.S. at 931, 95 S.Ct. at 2567.

There can be little doubt that if the plaintiffs are entitled to the protection which they seek, they will be irreparably injured if temporary injunctive relief is not granted. Plaintiffs and their predecessors have been selling CREAM OF WHEAT cereal since 1895. The court has set forth the extensive sales and advertising and the substantial commercial success which plaintiffs have enjoyed. The hot cereal selling season is about to commence and defendant is in the process of manufacturing and distributing its product to eventually reach the retail stores on or about October 1, 1982. Therefore, if plaintiffs are likely to succeed on the merits, the court has little difficulty in concluding that plaintiffs will be irreparably injured absent some immediate action by the court to forestall defendant's entry into the marketplace. Obviously if the trademark of plaintiffs is valid and entitled to protection, such value will be substantially eroded by the defendant's entry into the marketplace.

To some extent, it would be simple to calculate plaintiffs' financial losses by reference to defendant's actual sales of its CREAMY WHEAT cereal. However, the damage to the CREAM OF WHEAT trademark, assuming its validity, and the reputation of plaintiffs, is not subject to such ready calculation. Judge Learned Hand, considering an analogous situation, eloquently commented on the irreparable nature of injuries suffered from trademark violations:

His mark is the authentic seal; by it he vouches for the good which bears it; it carries name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful.

*Yale Electric Corporation v. Robertson,* 26 F.2d 972, 974 (2d Cir. 1928). Because the court finds that if plaintiffs' claim is meritorious, plaintiffs will suffer injury, the court must address the underlying merits of this action to determine whether it is likely that plaintiffs will prevail at trial.

■ Plaintiffs assert two claims in this action: one for trademark infringement and one for unfair competition. Although there are similarities in the proofs required for both claims, the claim for trademark infringement is narrower than that for unfair competition. *International Order of Job's Daughters v. Lindeburg and Company,* 633 F.2d 912, 915 (9th Cir. 1980), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981). Trademark infringement is really a subspecies of the broadly defined business tort of unfair competition. *Id.* The essential element of a trade-mark "is the exclusive right of its owner to use a word or device to distinguish his product." *Jean Patou, Inc. v. Jacqueline Cochran, Inc.,* 201 F.Supp. 861, 863 (S.D.N.Y.1962), *aff'd,* 312 F.2d 125 (2d Cir. 1963). A claim of unfair competition, on the other hand, "considers the total physical image given by the product and its name together. Thus unfair competition exists if the total impression of package, size, shape, color, design and name upon the consumer will lead him to confuse the origin of the product." *Id.* The claims for trademark infringement and unfair competition will each be considered separately.

## TRADEMARK INFRINGEMENT

■ Because CREAM OF WHEAT is a registered trademark, it is *prima facie* evidence of plaintiffs' "exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(a). The registration of the mark, however, does not preclude "an opposing party from proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered. *Id.* A defendant satisfies its burden of proof with respect to a defective registration by proving the defect by a preponderance of the evidence. *Keebler Company v. Rovira Biscuit Corporation,* 624 F.2d 366, 373 (1st Cir. 1980).

■ A mark's eligibility for trademark status and the degree of protection afforded to words and terms may be divided into four classes. In ascending order the classes are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Educational Development Corporation v. Economy Company,* 562 F.2d 26, 28 (10th Cir. 1977). Arbitrary or fanciful terms are commonly designated as "strong" marks. *Field Enterprises Educational Corp. v. Cove Industries, Inc.,* 297 F.Supp. 989 (E.D.N.Y. 1969). These marks "bear so little relation to the product they identify that they are considered entitled to protection against all users." *Id.* at 994. At the opposite end of the spectrum are generic terms. A generic term does not distinguish the goods of one producer from the goods of others. *Keebler Company v. Rovira Biscuit Corp.,* 624 F.2d 366, 374 (1st Cir. 1980). Instead, the term, either by definition or through common use "has come to be understood as referring to the genus of which the particular product is a species." *Id.* Aspirin, *Bayer Co. v. United Drug Co.,* 272 F. 505 (D.C.N.Y.1921), Escalator, *Haughton Elevator Co. v. Seeberger,* 85 U.S. Pat. Qtly. 80 (Comm'r Patents 1950), Cellophane, *Du Pont Cellophane Co. v. Waxed Products Co.,* 85 F.2d 75 (2d Cir.), *cert. denied,* 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443 (1936), and Cola, *Coca Cola Co. v. Snow Crest Beverages,* 162 F.2d 280 (1st Cir.), *cert. denied,* 332 U.S. 809, 68 S.Ct. 110,

92 L.Ed. 386 (1947), are examples of terms which have acquired generic meaning. All of these terms have in common one thing: in the minds of the public the words are primarily associated with a product rather than a producer. *Kellogg Co. v. Biscuit Co.,* 305 U.S. 111, 120, 59 S.Ct. 109, 114, 83 L.Ed. 73 (1938).

Close to the generic end of the spectrum are descriptive words. These words directly "convey to the buyer the ingredients, qualities, or characteristics of the product." *Educational Development Corporation v. Economy Company,* 562 F.2d 26, 29 (10th Cir. 1977). When used in their primary sense, descriptive terms cannot be registered as trademarks. *Field Enterprises Educational Corp. v. Cove Industries, Inc.,* 297 F.Supp. 989 (E.D.N.Y.1969). If, however, the descriptive term acquires secondary meaning, that is, the public identifies the term with the product's source of origin, the term is then valid as a trademark. *Id.* Suggestive terms fall in between fanciful and descriptive terms. *Educational Development Corporation v. Economy Company,* 562 F.2d 26 (10th Cir. 1977). The suggestive class was judicially created to fill the need for protection of marks which were neither exactly descriptive or fanciful. *Id.* at 29. These terms require the buyer to use "thought, imagination, or perception to connect the mark with the goods." *Id.*

The court must determine where, on the spectrum described above, Nabisco's product, CREAM OF WHEAT, is likely to fall. Defendant contends that CREAM OF WHEAT is descriptive because the term consists of two common nouns, both of which describe the ingredients and characteristics of the product. Webster's Third New International Dictionary defines "wheat" as a "cereal grain that yields a fine white flour." "Cream" is defined as indicating high quality such as "cream of the crop." Defendant points to the fact that several of Nabisco's exhibits refer to CREAM OF WHEAT as being composed of the quality part of the wheat or the cream of the wheat. Defendant also emphasizes

that there are other products on the market such as Cream of Rice, Cream of Rye and Cream of Oats, and that, therefore, a narrow scope of protection should be afforded to plaintiffs' trademark. The court agrees that, at trial, defendant will likely be able to prove that CREAM OF WHEAT is a descriptive term. This, however, does not conclude the inquiry. Merely because the term is descriptive does not render it unworthy of protection. Rather, the court must examine whether the mark, though likely descriptive, has acquired secondary meaning. On this issue, the court believes plaintiffs will prevail.

To acquire secondary meaning, a term must be identified by consumers with a particular source. *Id.* Such meaning is generally established through extensive advertising. *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225 (3d Cir. 1978). If secondary meaning is proven, competitors can be prevented from using a similar mark. *Id.* at 1228. The purpose of this rule "is to minimize confusion of the public as to the origin of the product and to avoid diversion of customers misled by a similar mark." *Id.* CREAM OF WHEAT has been extensively advertised for almost 100 years. Since Nabisco purchased the CREAM OF WHEAT mark in 1962, it has expended substantial amounts to keep the product in the public's eye. The court therefore concludes that it is likely that at trial plaintiffs will be able to show that CREAM OF WHEAT, though a descriptive mark, has acquired secondary meaning.

Although CREAM OF WHEAT has likely acquired secondary meaning, the court must still determine whether consumers are likely to be confused by defendant's mark, CREAMY WHEAT. Likelihood of confusion "is the key and common element of both infringement and unfair competition claims." *Purolator, Inc. v. EFRA Distributors, Inc.,* 524 F.Supp. 471, 475 (D.P.R.1981). Such confusion exists "when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a single

mark." *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1229 (3d Cir. 1978). In assessing likelihood of confusion, courts have commonly looked to the following factors:

the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendant's intent in adopting its mark; and the strength of the plaintiff's mark.

*Pignons S.A. de Mecanique de Precision v. Polaroid Corporation,* 657 F.2d 482, 487 (1st Cir. 1981).

■ Applying these criteria to the case at bar leads the court to conclude that it is unlikely that plaintiff will be able to demonstrate consumer confusion at trial. It is true that both plaintiffs and defendant manufacture cereal. It is also true that the products of both companies will likely compete for the same consumers through the same channels of distribution. In addition, the names of both products sound and look very much alike. However, it cannot be denied that CREAM OF WHEAT is not a strong mark and might even be generic. Therefore, at best, the mark is entitled to limited protection. This is especially true because there are other products on the market, such as Cream of Rice, Cream of Rye, and Cream of Oats, all of which are consumer foods. The existence of these marks dilutes the protection to be given to plaintiffs' mark. *Cf. Clarke v. K-Mart,* 473 F.Supp. 1299, 1303 (W.D.Pa.1979). Furthermore, the court finds that defendant will likely succeed in demonstrating that its mark, CREAMY WHEAT, uses the word "cream" in the primary descriptive sense to denote a product, soft and smooth like cream, and resembling cream in nature, color, and appearance. *See Creamette Co. v. Conlin,* 191 F.2d 108, 112 (5th Cir. 1951), *cert. denied,* 342 U.S. 945 (1952). Therefore, even considering the presumption of similarity which operates against defend-

ants in trademark matters, *Florence Manufacturing Company v. J. C. Dowd & Co.,* 178 F. 73, 75 (2d Cir. 1910), the court is unable to conclude that plaintiffs will likely prevail at trial and thus is unable to grant the relief sought.

## UNFAIR COMPETITION

■ As noted previously, in considering whether confusion exists with respect to the claim for unfair competition, the consumer's impression of defendant's package, size, shape, color, design, and name, will result in confusion about the origin of the product. *Jean Patou, Inc. v. Jacqueline Cochran, Inc.,* 201 F.Supp. 861 (S.D.N.Y.1962), *aff'd,* 312 F.2d 125 (2d Cir. 1963). It would be naive not to recognize that Quaker intends to meet Nabisco head-on in the marketplace and compete with it in the sale of CREAM OF WHEAT with Quaker's CREAMY WHEAT. Furthermore, the similarity in packaging is not a coincidence but is another effort by defendant to engage in such competition. However, there is little likelihood that plaintiffs will succeed in proving ultimately that the consuming public will think that Quaker CREAMY WHEAT is a product of Nabisco. Although at this juncture it may reasonably be argued that consumers associate CREAM OF WHEAT either with Nabisco or a single source, albeit unknown, there is no reasonable probability that such consumers would buy defendant's product believing that it was plaintiffs'.

Again dealing with the matter realistically, such products are most often displayed, if not side-by-side, within proximity of each other so as to afford to the consumer the opportunity for comparison. Defendant's product has conspicuous and numerous references to Quaker and the well-known symbol of the Quaker man on the package.

In addition, there is a clear distinction between the Quaker pilgrim and the Nabisco chef. The court is satisfied that the differences enunciated by the defendant set forth above are more significant than the similarities urged by plaintiffs.

For the foregoing reasons, the motion for a temporary restraining order and preliminary injunction is denied.[1]

---

1. Plaintiffs' counsel conceded that it would rely upon the papers already submitted in connection with its application for a preliminary injunction. Although defendant declined to make such concession, the court assumes that defendant will now do so in view of the court's ruling.