OPINION OF THE COURT
Bernard S. Greenbaum, J.
Petitioner commenced this proceeding by service of a notice of petition and petition on April 25, 1995. On July 3, 1995, *608 Priorities Publications, Inc. (hereinafter referred to as respondent), moved to dismiss the petition. Due to a miscommunication with the court, the petition was adjourned but the motion to dismiss was not adjourned. Based upon the petitioner’s apparent default, the motion to dismiss was granted.
Apparently, it was the parties’ intention to adjourn both the notice of petition and petition and the motion to dismiss. The parties have now stipulated that respondent’s motion to dismiss and the notice of petition and petition be considered and decided together. Thus, the prior order of this court, dated August 17, 1995, is hereby recalled.
Based upon a review of the papers submitted, this court decides the petition and the respondent’s motion to dismiss the petition solely to the extent that a hearing is to be conducted in Special Term, Part 1 of this courthouse on March 27, 1996 in room 139 at 9:30 a.m. to determine the issues raised herein.
On September 9, 1991, petitioner obtained a judgment against respondent Chocolate Singles Enterprises, Inc. (hereinafter referred to as CSE) in the amount of $18,039.21. Such judgment remains unsatisfied except for the sum of $605.93.
On May 6, 1992, pursuant to a subpoena duces tecum of CSE by Barbara Miles, president thereof, petitioner learned that CSE was the owner of the trade name "Chocolate Singles” and that such trade name was a Federally registered trademark. The trademark was used in connection with the publication of Chocolate Singles magazine and has now been transferred to respondent. It is alleged by petitioner that both the respondent and CSE, the judgment debtor, are defunct and insolvent.
Petitioner now seeks to enforce the money judgment pursuant to CPLR 5225 (b) and to direct the respondent to turn over the trade name "Chocolate Singles” under Debtor and Creditor Law article 10 as a conveyance to defraud a creditor.
The question before this court is whether a trademark or trade name is the type of property against which a money judgment enforcement proceeding may be brought.
CPLR 5201 (b) states that: "Property against which a money judgment may be enforced. A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment. A money judgment *609 entered upon a joint liability or two or more persons may be enforced against individual property of those persons summoned and joint property of such persons with any other persons against whom the judgment is entered.”
Enforcement proceedings may be brought against personal property both tangible and intangible. However, there is a paucity of cases, and none in New York case law, which deal with enforcement against an intangible such as a trade name.
This court has, therefore, looked to Federal case law for guidance.
As stated in Marshak v Green (746 F2d 927, 929, 223 USPQ [BNA] 1099):
"Although no case has been found precisely such as this in which a Federal Court has confronted the issue of whether a trade name by itself can be subjected to a forced sale, courts have held that registered trade names or marks may not be validly assigned in gross. A sale of a trade name or mark divorced from its goodwill is characterized as an 'assignment in gross.’
"A trade name or mark is merely a symbol of goodwill; it has no independent significance apart from the goodwill it symbolizes. 'A trademark only gives the right to prohibit the use of it so far as to protect the owner’s goodwill.’ Prestonettes, Inc. v. Coty (1924) 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731; a trademark cannot be sold or assigned apart from to [sic] goodwill it symbolizes, Lanham Act, § 10, 15 U.S.C.S. § 1060. There are no rights in a trademark apart from the business with which the mark has been associated; they are inseparable, Pepsico, Inc. v. Grapette Company, 416 F.2d 285 (8th Cir.1969); Avon Shoe Co. v. David Crystal, Inc., 171 F.Supp. 293, 301, affd 279 F.2d 607, cert. denied, 364 U.S. 909, 81 S.Ct 271, 5 L.Ed.2d 224 (1960). Use of the mark by the assignee in connection with a different goodwill and different product would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing, whether used by one person or another. '[T]he consumers might buy a product thinking it to be of one quality or having certain characteristics and could find only too late to be another. To say that this would be remedied by the public soon losing faith in the product fails to give the consumer the protection it initially deserves.’ Pepsico, Inc. v. Grapette Co., 416 F.2d 285, 289 (8th Cir.1969). See also, 1 J. McCarthy, Trademark and Unfair Competition, § 18.1, p. 794 (2d ed. 1984).”
In conclusion, the court (supra, at 931), found that: "In New York, a money judgment may be enforced against any debt, *610 which is past due or which is yet to become due, or upon an assignable cause of action. N.Y.C.P.L.R. § 5201 (a). The same statute permits enforcement of a money judgment against any property which could be assigned or transferred, whether or not it is vested. N.Y.C.P.L.R. § 5201 (b). However, a trade name in gross is not 'property’ within the meaning of the statute. Compare Port Chester Electrical Construction Corp. v. Atlas, 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983 (N.Y.1976) (creditor can enforce debtor’s contractual claims to reimbursement which are due), with Glenmore Distilleries Co. v. Seideman, 267 F.Supp. 915, 918 (E.D.N.Y.1967) (a claim in quantum meruit '* * * being only inchoate, uncertain, and contested, has no present value * * * ’ and is not due certainly or on demand.)”
Petitioner cites Haymaker Sports v Turian (581 F2d 257) in support of the position that a forced sale of the trade name would be appropriate under the general rule that a trustee in bankruptcy or an assignee for the benefit of creditors may validly assign a trademark.
Such case alludes to that general rule (supra, at 262), but also clearly indicates that such assignments are only valid when the goodwill and all tangible assets of the assignor are transferred under the assignment by stating that: "An assignee for benefit of creditors or trustee in bankruptcy succeeds to all assets, both tangible and intangible, and for this reason can validly assign trademark rights with appurtenant goodwill and assets to a subsequent purchaser for value. See 1 J. McCarthy, supra, § 18:9 at 622-23; Annot., 44 A.L.R. 706 (1926), and cases cited therein.”
However, it does appear that some assignments of trade names separate from the underlying business have been upheld when "the assignee is producing a product * * * substantially similar to that of the assignor [such that] consumers would not be deceived or harmed” or when there is "continuity of management.” (Marshak v Green, supra, 746 F2d, at 930.) "Thus, a trademark may be validly transferred without the simultaneous transfer of any tangible assets, as long as the recipient continues to produce goods of the same quality and nature previously associated with the mark.” (See, Defiance Button Mach. Co. v C & C Metal Prods. Corp., 759 F2d 1053, 1059.)
Since an assignment of the trade name under the circumstances above would be permissible, this court finds that it would follow that a forced sale of the trade name to a recipient who "continues to produce goods of the same quality and *611 nature previously associated with the mark” (see, Defiance Button Mach. Co. v C & C Metal Prods. Corp., supra, at 1059) would be valid.
That is, absent any tangible assets, goodwill or continuity of management, a trademark could still validly be assigned if the assignment were to someone in the same trade or field who produced or would produce items substantially the same as those produced by the assignor. The basic guideline being to prevent a fraud upon the public.
In the instant case, the court has received very limited information concerning the trade name and the business involved. Apparently, the respondent and the judgment debtor are defunct and insolvent. There is no showing of any tangible assets or any goodwill still extant with respect to the trade name or the magazine. Further, this court notes that it has not been informed as to what type of business or product is or ever was involved under the subject trade name other than the fact that it was associated with the publication of a magazine. It is unknown whether there are any other producers of substantially the same type and quality product for the purposes of a sale solely to those involved in such a field.
Absent such information, this court finds that a hearing is necessary to determine various questions including, but not limited to, the type of product involved under the trade name; the existence of any tangible assets or goodwill; and the existence of other producers in such field who would be the subject of a notice of the sale of the trademark.
Accordingly, this court decides the respondent’s motion to dismiss the petition and the petition solely to the extent that a hearing is to be conducted in Special Term, Part 1 of this courthouse on March 27, 1996 in room 139 at 9:30 a.m. to determine the issues raised herein.