OPINION OF THE COURT
John M. Galasso, J.
Petitioner GE Commercial Finance Business Property Corporation brings this order to show cause pursuant to CPLR 5225 (a) and 5227 for an order directing respondent Bahram Hakakian to turn over and deliver the transfer of all his interest in and to the trademark “Barami” to GE and to execute the documents necessary to such transfer. Petitioner also seeks a declaration that GE is the rightful owner of the trademark. Petitioner’s application is predicated on a Nassau County judgment previously entered against respondent on September 6, 2000 of which $415,761.92 remains due and owing.
The underlying procedural and factual history of this action spans several years. Over 25 years ago respondent debtor owned and operated several retail women’s clothing stores which were called “Barami” and did business in corporate form. In 1980 respondent incorporated Barami Enterprises, Inc. which operated the stores directly or through affiliates and subsidiaries.
Respondent Hakakian was the sole owner of Barami Enterprises, Inc. The affiliates maintained the right to use the Barami trade name in the territories they occupied.
Respondent registered “Barami” as a trademark for the first time in 1991 and renewed that registration in 2002 (see 15 USC § 1051). He has admitted to ownership of the registered trademark in an unrelated civil action (US Dist Ct, Southern Dist, NY, 04 Civ 01547) and the documentary evidence supports this admission.
In 1999 respondent, as the sole owner for Barami Enterprises Inc., filed a bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York (Case No. 99-B-42801-42805). Bank Leumi was the only secured creditor at those proceedings and petitioner GE was one of the many unsecured creditors.
A chapter 11 reorganization plan was explored and all but consummated when on September 11, 2001, respondent’s flagship store in the World Trade Center was destroyed.
*415 Consequently, all parties to the initial plan agreed that an emergency modified plan settlement rather than a de novo approach to a chapter 11 filing would be best to ensure that the remaining stores could continue operation and their many employees and suppliers be protected. The final settlement reached on May 9, 2003 was ultimately so-ordered by the United States Bankruptcy Court by use of its emergency powers on May 17, 2002 (Bankruptcy Code [11 USC] § 350 [b]; § 105 [a]; Fed Rules Bankruptcy Pro rule 9007, 2002 [m]).
In contemplation of the settlement, on April 1, 2002, Bank Leumi conveyed “as is” to multiple investors its ownership rights tangible and intangible as a secured creditor to Barami Enterprises and the various debtors in possession of the remaining Barami Enterprises stores. In addition, respondent as the registered owner of the trademark and sole shareholder of Barami Enterprises and in consideration of Bank Leumi’s conveyance, by separate document also dated April 1, 2002 (to which none of the unsecured creditors were party) directly granted the irrevocable exclusive right and license to use the Barami trademark to the third-party purchasers, now respondents herein.
Although the so-ordered settlement was signed by counsel to the unsecured creditors’ committee, GE, by separate counsel and apparent predecessor law firm to petitioner’s counsel at bar, first objected and then moved to vacate the final settlement objecting to the radically altered treatment of the unsecured creditors, claiming it did not have sufficient notice of the modified plan as submitted to the court and questioning the Bank Leumi transfers (see Fed Rules Bankruptcy Pro rule 9024; 11 USC § 1127 [b]).
Neither the Barami trademark licenses nor respondent’s individual retention of the ownership of the registered trademark and the benefit of its associated goodwill postsettlement was mentioned in the application. In addition, GE did not appeal the court’s confirmation of the plan over its objection. Bankruptcy Code § 1129 (b) (1) provides that a plan may be confirmed over objection if the plan “does not discriminate unfairly” and is “fair and equitable.”
The essence of GE’s petition before this court is that it is entitled to an assignment of respondent’s registered trademark by virtue of the state court judgment entered against him after the bankruptcy petition was filed but before the settlement plan was finalized.
*416 Respondent, however, maintains that the registered trademark of Barami cannot be transferred because it is not “property” within the meaning of CPLR 5201 (b) and because the turnover of the trademark alone is prohibited as an “assignment in gross,” i.e., without the attendant goodwill established by respondent under common-law principles (Marshak v Green, 746 F2d 927 [1984]).
By separate decision this court allowed the currently in business purchaser/licensees or their successors of the reorganized Barami subsidiaries and affiliates to intervene as respondents to GE’s petition because it was necessary to distinguish between an unsecured creditors’ rights pre- and post-entry of the Bankruptcy Court judgment and to determine if the registered trademark may be considered property under New York law and subject to enforcement pursuant to CPLR article 52. Additionally, the court hoped that by permitting intervention, these intricate matters could finally be brought to a close.
The issues presented have been blurred by the parties’ arguments with reference to common-law trademark rights per se and whether or not these were owned and thereafter transferred from Bank Leumi. However, the court does not have to address that specific issue in order to determine petitioner’s instant application.
Whatever tangible or intangible rights Bank Leumi possessed as the sole secured creditor and as inured to the bankruptcy estate it transferred in total as part of a going concern in order to effectuate the emergency settlement. This “lock, stock and barrel” approach enabled a smooth transition with the right to the use of the trade name Barami in signs, advertising and the like. Although the actual trademark was not listed as a separate and distinct asset of the bankrupt estate, Bank Leumi, having succeeded to all assets could validly convey the trademark right with appurtenant goodwill (1 J. McCarthy, Trademark and Unfair Competition § 18:9 [2d ed 1984]; Victoria Graphics v Priorities Publs., 167 Misc 2d 607 [1996]).
Accordingly, although registered trademarks are considered property with a distinct monetary value of their own including the right to receive payment for licensing the trademark (Winston & Winston, Credit & Collection Law § 2-31), the investors would have an implied right to use the mark by their purchase from Bank Leumi without resorting to a separate *417 licensing grant and it would not be considered an assignment “in gross” (cf., Marshak v Green, supra).
Consequently, this court is not convinced that it was even necessary for respondent Hakakian to separately provide the irrevocable licenses in the first instance for the purchasers to have the right to use the Barami trademark in their retail business.
In any event, the court can appreciate why the investors insisted the licenses to be in writing by the owner of record before closing: to further protect themselves from any potential trademark infringement claims, which, it should be noted, could occur here should petitioner’s application be granted in its entirety.
The above analysis leads the court to conclude that the emergency settlement encompassed both common-law and registered trademark rights along with the essential goodwill and that its confirmation closed any avenue of enforcement under state law under the principles of res judicata as to those businesses affected (see Clain v International Steel Group, 156 Fed Appx 398 [2005]; 9E Am Jur 2d, Bankruptcy § 3444; cf., In re Coastal Plains, Inc., 182 Fed Appx 379 [5th Cir 2006]).
Turning to GE’s petition regarding enforcement of the state judgment against respondent Hakakian’s property rights to his registered trademark both before and after the bankruptcy petition was finalized, the court determines that since the trademark cannot be assigned “in gross” apart from a business or goodwill with which the mark has been established, it would be improper to award petitioner the trademark outright (Marshak v Green, supra). Nor is the court comfortable with the compromise of a sheriffs auction which not only would open up the sale to unknown third parties but could also encourage insiders to the prior proceedings to artificially undervalue its worth.
Since in New York a trademark can be transferred if the assignment were to someone in the same trade producing or selling items substantially the same as those produced by the assignor (see Victoria Graphics v Priorities Publs., supra and cases cited therein), a judgment lien on the trademark registered in the United States Patent and Trademark Office may be imposed by a filing of an order with the Patent and Trademark Office prohibiting any assignment, transfer, license or other disposition of the business mark until further court order. Thus, *418 potential purchasers of the trademark in the future would have to negotiate with petitioner on a fair market basis (cf., Bambu Sales, Inc. v Sultana Crackers, Inc., 683 F Supp 899 [1988]).
Accordingly, the petition is granted in part and denied in part as set forth above. Attorneys’ fees are denied.
Petitioner is directed to submit a proposed order for the Patent and Trademark Office on notice.